EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| George Otero Calero (TS-6,971) | 2018 TSPR 112 |
| | 200 DPR ____ |
| Fabio J. Pacheco Gómez (TS-16,745) | |

Número del Caso: CP-2015-7


Fecha:   15 de junio de 2018


Comisionada Especial:


        Hon. Ygrí Rivera de Martínez

Abogados de los querellados:

        Por derecho propio.


Oficina del Procurador General:

        Lcdo. Joseph Feldstein Del Valle
        Sub Procurador General

        Lcdo. Eric De la Cruz Iglesias
        Procurador General Auxiliar


Materia:  La suspensión será efectiva una vez advenga final y firme la Sentencia conforme la Regla 45 del Reglamento del Tribunal Supremo sobre reconsideración.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | |
|---|---|---|
| George Otero Calero (TS-6,971) | CP-2015-0007 | *Conducta Profesional* |
| Fabio J. Pacheco Gómez (TS-16,745) | | |

**PER CURIAM**

En San Juan, Puerto Rico, a 15 de junio de 2018.

Una vez más nos vemos en la obligación de suspender a dos letrados del ejercicio de la abogacía por incumplir con los postulados éticos que, como mínimo, deben guiar la gestión de todo miembro de la profesión legal. En esta ocasión intervenimos disciplinariamente con el Lcdo. George Otero Calero por infringir los Cánones 12, 18, 19, 24 y 38 y con el Lcdo. Fabio J. Pacheco Gómez por infringir los Cánones 12, 18, 19, 20, 24 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Veamos.

**I**

El Lcdo. George Otero Calero (licenciado Otero Calero) fue admitido al ejercicio de la abogacía el 20 de noviembre de 1980 y a la práctica de la notaría el 22 de diciembre del mismo año. Por su parte, el Lcdo. Fabio Pacheco Gómez (licenciado Pacheco Gómez) fue admitido al ejercicio de la abogacía el 20 de febrero de 2008 y a la práctica de la notaría el 2 de julio del mismo año.

El 6 de diciembre de 2013, la señora Odalys M. Rosa Santos (señora Rosa Santos o querellante) presentó una queja contra los licenciados Otero Calero y Pacheco Gómez. La queja surgió como consecuencia de una demanda federal de discrimen laboral que la querellante presentó contra su patrono *Puerto Rico Children's Hospital* (PRCH) y los Dres. Samuel A. Fernández López y Fernando Lugo Fabres (doctores). Con el objetivo de presentar esta demanda, según surge del expediente, el 18 de agosto de 2010 la señora Rosa Santos tuvo una entrevista inicial con el licenciado Pacheco Gómez, quien en ese momento trabajaba en el Bufete Otero y Asociados (Bufete).[1] En la entrevista el licenciado Pacheco Gómez indicó que el Bufete estaba interesado en representarla. Sin embargo, como el letrado no estaba admitido a litigar en el Tribunal de Distrito Federal de Puerto Rico, informó que fungiría como intermediario entre la querellante y el licenciado Otero Calero, quien la representaría.

El 25 de agosto de 2010 el licenciado Pacheco Gómez y la querellante firmaron un contrato de servicios profesionales. Acordaron que se cobrarían $ 3,000.00 de honorarios iniciales, más un 33 % por concepto de

---

[1] El licenciado Otero Calero señaló que "[l]a relación contractual entre el Bufete Otero y Asociados y sus asociados es la normal, donde cada asociado trabaja sus propios casos a ellos referidos por la misma oficina y/o aquellos que ellos mismos traen al bufete. El bufete mantiene la misma responsabilidad para con los clientes que se le atribuyen a los bufetes con múltiples asociados, y conforme a los cánones de ética de la profesión.

Entendemos que la ventaja que tiene el cliente en este tipo de relación de asociados, es que tiene acceso a la experiencia legal de cada uno de ellos en beneficio de su propio caso, independientemente del compañero que lleve el caso. Las cuestiones de derecho se evalúan y discuten entre todos". *Informe de conferencia enmendado*, pág. 3.

honorarios contingentes.[2] Cabe destacar que la querellante pagó, entre costas y honorarios, la suma total de $ 3,887.50. De la suma mencionada, $ 1,237.50 se originaron de su compensación por incapacidad parcial-permanente de la Corporación del Fondo del Seguro del Estado.[3]

Así las cosas, el licenciado Pacheco Gómez representó a la querellante ante la agencia administrativa federal *Equal Employment and Opportunity Comission* (EEOC) y obtuvo el *Notice of Right to Sue*. De este modo se agotó el trámite administrativo de rigor para presentar una reclamación laboral en el foro judicial federal.

El 11 de mayo de 2011 el licenciado Pacheco Gómez remitió una carta a la señora Rosa Santos en la cual le solicitó que se comunicara con el Bufete debido al vencimiento del término para presentar documentos esenciales en el caso. Varios días después la querellante se reunió con el licenciado Pacheco Gómez. Allí, este último solicitó una relación de hechos detallados sobre las

---

[2] El Contrato de Servicios Profesionales, en lo pertinente, lee de la manera siguiente:

> "Por concepto de honorarios de abogado, los mismos se pagarán a razón de: TRES MIL DÓLARES ($3,000.00) de **adelanto** por el trabajo del abogado y un treinta y tres por ciento (33%) **adicional** del recobro judicial o extra-judicial.

> Hago constar que le hago entrega al LCDO. FABIO J. PACHECO GÓMEZ la cantidad de TRES MIL DÓLARES ($3,000.00) como adelanto del presente caso […]". (Énfasis suplido). Véase Contestación al Informe del Procurador, *Contrato de Servicios Profesionales* de 25 de agosto de 2010, Anejo 2.

[3] Véanse el *Cheque* emitido el 28 de septiembre de 2010 a la orden de Odalys Rosa Santos y del licenciado Pacheco Gómez y la *Decisión del Administrador sobre Inversión* de 28 de septiembre de 2010. Esta prueba fue estipulada por ambos licenciados ante la Comisionada Especial.

alegaciones en controversia.[4] Provisto de la información solicitada, el 8 de junio de 2011 el licenciado Otero Calero presentó la demanda federal por discrimen laboral contra PRCH y los doctores.[5]

El 17 de mayo de 2012 el foro federal desestimó sin perjuicio las demandas presentadas contra los doctores. Concluyó que éstos no eran empleados directos de PRCH, según la definición de la Ley Núm. 17 del 22 de abril de 1988, según enmendada, 29 LPRA sec. 155 *et seq.*, mejor conocida como Ley de Hostigamiento Sexual en el Empleo.[6] En vista de lo anterior, el 25 de junio de 2012 la querellante envió un correo electrónico al licenciado Pacheco Gómez, en el cual expuso sus términos para transigir las reclamaciones federales contra PRCH y las potenciales reclamaciones en el foro estatal contra los doctores. Pese a lo anterior, varios meses después el licenciado Pacheco Gómez renunció como abogado del Bufete. Su renuncia no fue notificada a la señora Rosa Santos.[7]

El 29 de julio de 2013, en el marco de la continuación del pleito federal, el tribunal impuso una sanción de cien dólares a la querellante y a PRCH por no haber presentado el informe con antelación al juicio que había ordenado el 18 de enero de 2012. De hecho, el foro federal concedió a

---

[4] Véase el correo electrónico de 24 de mayo de 2011, titulado *Caso Federal Hostigamiento Laboral*.

[5] Véase el Informe de la Oficina de la Procuradora General, *Civil Docket for Case #: 3:11-cv-01539-MEL,* Anejo 7, pág. 31.

[6] En el pleito permaneció únicamente PRCH como demandado. Véase íd., *Opinion and Order* de 28 de septiembre de 2012, Anejo 14, pág. 60.

[7] Véase el correo electrónico de 14 de julio de 2014.

las partes una prórroga hasta el 31 de julio de 2013 para cumplir con la orden emitida un año y medio antes. Los apercibió de la posibilidad de imponer sanciones severas si incumplían con la orden, incluyendo la desestimación por falta de diligencia.[8] No obstante, el licenciado Otero Calero llegó a un acuerdo con el demandado PRCH para desistir sin perjuicio del caso, sin imposición de costas, gastos ni honorarios de abogado.[9] En vista de la petición presentada por los abogados de las partes, el Tribunal de Distrito federal desestimó sin perjuicio la demanda presentada por la peticionaria contra PRCH.[10]

El 10 de septiembre de 2013 la señora Rosa Santos remitió un correo electrónico al licenciado Pacheco Gómez en el cual indicó que desde octubre de 2012 no recibía información sobre el pleito contra PRCH ni los casos estatales contra los doctores. Varios días después el licenciado Pacheco Gómez contestó la comunicación y le informó, por primera vez, que desde noviembre de 2012 no trabajaba con el Bufete Otero y Asociados. Además, instó a la querellante a contactar al Bufete para informarse sobre el estado de sus casos.[11]

La señora Rosa Santos expuso que se comunicó con el licenciado Otero Calero entre el 23 y el 27 de septiembre

---

[8] Véase el Informe de la Oficina de la Procuradora General, *Civil Docket for Case #: 3:11-cv-01539-MEL*, Anejo 7, págs. 37-38.

[9] Íd., *Response to order to show cause* y el *Joint stipulation for voluntary dismissal & judgment*, Anejo 11, págs. 53-54; *Civil Docket for Case #: 3:11-cv-01539-MEL*, Anejo 7, págs. 39-40.

[10] Íd., *Judgment*, Anejo 11, pág. 55.

[11] La señora Rosa Santos respondió al correo electrónico del licenciado Pacheco e hizo evidente la frustración y la decepción que sintió por la conducta del letrado.

de 2013. En ese momento fue que el letrado le informó que perdieron el caso federal y que no pudo hacer nada al respecto. Sostuvo que el letrado le señaló que iban a reunirse con el licenciado Pacheco Gómez para discutir el contrato de representación legal, así como lo relacionado a los casos estatales.[12]

Tras varios meses sin lograr conseguir al licenciado Otero Calero, el 6 de diciembre de 2013 la señora Rosa Santos presentó ante este foro una queja contra ambos letrados, junto a varios documentos en apoyo de sus alegaciones. En esencia, les imputó no mantenerla informada, así como falta de competencia y de diligencia en la tramitación de sus casos. Además, solicitó la devolución de los $ 3,000 que pagó de honorarios profesionales.[13]

Los letrados contestaron la queja el 10 de marzo de 2014. Alegaron que acordaron verbalmente con la querellante enmendar el contrato de servicios profesionales para cambiar los honorarios contingentes de 33 % a 25 %. Adujeron que los casos estatales contra los doctores no se radicaron por la falta de interés de la querellante y que la necesidad de instar esa reclamación en el foro estatal surgió por la desestimación parcial de la acción federal. Además, arguyeron que, como no podían conseguir a la querellante, no le pudieron notificar la renuncia del licenciado Pacheco Gómez. Nada dijeron en cuanto al

---

[12] Véase *Formulario de Quejas*, págs. 6-7.

[13] Íd., pág. 8.

desistimiento sin perjuicio acordado con PRCH en el foro federal sin el consentimiento de la señora Rosa Santos.

El 6 de junio de 2014 la querellante presentó un *addendum* a la queja. Sostuvo que había acudido al Bufete dos días antes a recoger el expediente de su demanda laboral y que el licenciado Otero Calero rehusó entregárselo. Indicó que el letrado manifestó que el licenciado Pacheco Gómez tenía que estar presente durante su entrega y que ello ocurriría dentro de un mes, cuando el licenciado Pacheco Gómez regresara de un viaje al exterior. Por su parte, el licenciado Otero Calero arguyó que en la oficina le habían dicho a la querellante que el trámite de la entrega se hacía con cita previa debido al volumen del expediente y que se demoraba por la toma de múltiples fotocopias.[14] El 17 de junio de 2014 el expediente fue entregado a la señora Rosa Santos.[15]

Examinadas las alegaciones, procedimos a remitir el asunto a la Oficina de la Procuradora General para que sometiera un informe sobre los hallazgos de su investigación. En su informe, la Procuradora General arguyó que la conducta de los querellados no fue una competente ni diligente. Sostuvo que la desestimación de la reclamación judicial de la querellante constituía una violación patente a los postulados éticos profesionales. Indicó que el contrato de servicios profesionales fue firmado por la querellante y el licenciado Pacheco Gómez, y este último

---

[14] Véase el Informe de la Oficina de la Procuradora General, Anejo 5, págs. 17-18.

[15] Íd., pág. 17.

fungió como intermediario entre la querellante y el licenciado Otero Calero en la representación en el caso federal. Por ello, adujo que no debió esperar diez meses para informarle a la querellante que ya no trabajaba en el Bufete y sobre el estado de los procesos judiciales. La Procuradora General concluyó que la señora Rosa Santos estaba en la impresión de que el licenciado Pacheco Gómez llevaba su caso contra los doctores en la jurisdicción estatal, por lo que ambos letrados incumplieron de manera crasa su deber de mantenerla informada. Señaló que era meritoria la alegación de la querellante en cuanto a la devolución de los honorarios pagados por adelantado. Ello, en virtud de la clara prohibición estatutaria de llevar a cabo pactos sobre honorarios con trabajadores o empleados que se ven en necesidad de reclamar contra sus patronos al amparo de leyes laborales estatales o federales.[16] Como consecuencia, estimó que los querellados infringieron los Cánones 12, 18, 19, 24 y 35 del Código de Ética Profesional y recomendó el inicio de un proceso disciplinario formal en contra de los licenciados.

Luego de los trámites de rigor, que incluyeron la presentación de la querella correspondiente por la Oficina de la Procuradora General,[17] así como la contestación de

---

[16] In re Franco Rivera, 169 DPR 237, 266 (2006); Art. 1 de la Ley Núm. 402 del 12 de mayo de 1950. (32 LPRA Sec. 3114).

[17] La Oficina de la Procuradora General presentó cinco cargos contra cada uno de los licenciados en los que señaló violaciones adicionales a los preceptos éticos que había imputado inicialmente en su informe. En particular, imputó al Lcdo. Otero Calero la violación al Canon 12, 18, 19, 24 y 38 del Código de Ética Profesional. Por su parte, le imputó al Lcdo. Pacheco Gómez haber infringido el Canon 12,

los licenciados Otero Calero y Pacheco Gómez, nombramos a la Hon. Ygrí Rivera de Martínez, ex Jueza del Tribunal de Apelaciones, para que en calidad de Comisionada Especial recibiera la prueba y nos rindiera un informe con las determinaciones de hechos y las recomendaciones que estimara pertinentes. Celebradas varias vistas por la Comisionada Especial, el 10 de agosto de 2017 rindió un amplio y detallado informe con sus determinaciones y conclusiones sobre el caso. Cabe mencionar que la Comisionada Especial coincidió con las determinaciones y conclusiones de la Procuradora General. En particular, expuso que no cabía duda que la querellante discutió con el licenciado Pacheco Gómez la posibilidad de una demanda federal por parte de ella sobre discrimen laboral contra PRCH y los doctores; que procedía que los licenciados devolvieran la suma de $ 3,000.00 por haber sido indebidamente acordados y pagados por la querellante; que ambos letrados demostraron falta de competencia y de diligencia en los asuntos de la querellante; que los licenciados Otero Calero y Pacheco Gómez fallaron a su deber de mantener a su clienta informada de las incidencias de su caso; que no desplegaron una conducta digna y honorable ante la querellante; que incurrieron en apariencia de conducta profesional impropia; y que el licenciado Pacheco Gómez no informó a la señora Rosa Santos oportunamente sobre su renuncia, a pesar de que fue quien

---

18, 19, 20, 24 y 38 del Código de Ética Profesional. Véase la *Querella*, págs. 7-17.

la orientó sobre la alternativa de radicar una demanda en el foro estatal y sobre la posibilidad de un acuerdo extrajudicial con los doctores. En vista de ello, concluyó que se cometieron las violaciones éticas imputadas en la querella por la Oficina de la Procuradora General.

Ante este escenario, el caso quedó sometido en sus méritos para la adjudicación por esta Curia. Examinado el marco fáctico que antecede, procedemos a exponer el derecho aplicable.

## II

Como parte de nuestra facultad inherente de regular la profesión jurídica en Puerto Rico nos corresponde asegurar que los miembros admitidos a la práctica de la abogacía y la notaría ejerzan sus funciones de manera responsable, competente y diligente.[18] Sabido es que el Código de Ética Profesional establece las normas de conducta éticas que como mínimo debe cumplir todo miembro de la clase togada.[19] Como corolario de lo anterior, el objetivo de cada abogado debe ser conducirse a un nivel superior al estándar que establecen los cánones.[20]

Una de las disposiciones más importantes en nuestra normativa deontológica es el Canon 12 del Código de Ética Profesional, *supra*, el cual impone al abogado el deber de tramitar las causas de su cliente de manera responsable,

---

[18] In re Marín Serrano, 197 DPR 535, 538 (2017); In re Montalvo Delgado, 196 DPR 542, 556 (2016); In re Sepúlveda Torres, 196 DPR 50, 53 (2016).

[19] In re Marín Serrano, *supra*; In re Sepúlveda Torres, *supra*. Véase, además: In re Guemárez Santiago, 191 DPR 611, 617-618 (2014); In re Falcón López, 189 DPR 689, 695 (2013).

[20] In re Irisarri Castro, 172 DPR 193, 209-210 (2007).

con puntualidad y diligencia. Específicamente, el Canon 12 dispone lo siguiente:

> Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente.

"[E]l deber de diligencia constituye una obligación básica y elemental del abogado hacia su cliente".[21] La diligencia "implica que el [abogado] realice las gestiones que le fueron encomendadas en momento oportuno, en forma adecuada y sin dilaciones que puedan afectar la pronta solución de la controversia".[22] Es por ello que "el deber de ser puntual en el trámite del litigio y desplegar todas las diligencias necesarias frente al tribunal ha de cumplirse por el abogado en todas las etapas del pleito".[23]

Cónsono con lo anterior, el Canon 18 de Ética Profesional, *supra*, impone a todo miembro de la profesión legal el deber de defender a su cliente de forma capaz y diligente.[24] En lo pertinente, este canon indica que "[e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo

---

[21] In re Pietri Torres, 191 DPR 482, 488 (2014).

[22] In re Morell Bergantiños, 195 DPR 759, 763 (2016). Véase In re Amill Acosta, 181 DPR 934, 940 (2011), al citar a S. Steidel Figueroa, Ética y Responsabilidad del Abogado, San Juan, Pubs. JTS, 2010, pág. 179.

[23] In re Nazario Díaz, 195 DPR 623, 635 (2016); In re Muñoz, Morell, 182 DPR 738, 750 (2011).

[24] In re Nazario Díaz, *supra*, pág. 636.

saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable". Entre las conductas que infringen lo preceptuado en el Canon 18, se han reconocido las siguientes: (1) no comparecer a los señalamientos del tribunal; (2) no contestar los interrogatorios sometidos; (3) no informar a las partes sobre la presentación de un perito; (4) desatender o abandonar el caso; (5) permitir que expire el término prescriptivo o jurisdiccional de una acción; y (6) cualquier tipo de acción negligente que pueda conllevar o, en efecto, resulte en la desestimación o el archivo del caso.[25]

El Canon 19 del Código de Ética Profesional, *supra*, dispone que "[e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado". La información que un abogado debe suministrar a su cliente es aquella que este debe tener por su condición de dueño del caso.[26] Así, un abogado infringe el Canon 19 cuando no atiende los reclamos de información de su cliente, no le informa de un resultado adverso en la gestión encomendada, no mantiene informado al cliente con relación al estado o la situación procesal del caso o, simplemente, cuando le niega información de su caso.[27]

---

[25] In re Plaud González, 181 DPR 874, 886-887 (2011). Precisamente, en In re Hernández González, 188 DPR 721 (2013), censuramos enérgicamente a un abogado cuya falta de diligencia ocasionó el archivo de un caso sin perjuicio.

[26] In re García Ortiz, 187 DPR 507, 519 (2013).

[27] In re Reyes Coreano, 190 DPR 739, 752-753 (2014).

Por su parte, el Canon 20 del Código de Ética Profesional, *supra*, establece el procedimiento y los preceptos éticos que deben seguir los abogados al renunciar a la representación legal de un cliente. Este dispone que

> [c]uando el abogado haya comparecido ante un tribunal en representación de un cliente no puede ni debe renunciar la representación profesional de su cliente sin obtener primero el permiso del tribunal y debe solicitarlo solamente cuando exista una razón justificada e imprevista para ello.

> Antes de renunciar la representación de su cliente el abogado debe tomar aquellas medidas razonables que eviten perjuicio a los derechos de su cliente tales como notificar de ello al cliente; aconsejarle debidamente sobre la necesidad de una nueva representación legal cuando ello sea necesario; concederle tiempo para conseguir una nueva representación legal; aconsejarle sobre la fecha límite de cualquier término de ley que pueda afectar su causa de acción o para la radicación de cualquier escrito que le pueda favorecer; y el cumplimiento de cualquier otra disposición legal del tribunal al respecto, incluyendo la notificación al tribunal de la última dirección conocida de su representado.

> Al ser efectiva la renuncia del abogado debe hacerle entrega del expediente a su cliente y de todo documento relacionado con el caso y reembolsar inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servicios que no se han prestado. (Énfasis nuestro).

En cuanto a la forma en que se debe dar por terminada la relación profesional, ésta varía si el abogado ha comparecido formalmente ante el tribunal. "De ordinario, en ausencia de una comparecencia oficial ante un tribunal, el abogado está en libertad de dar por finalizada una relación

profesional con un cliente con una adecuada notificación a éste sin formalismos significativos".[28]

Debemos aclarar que los deberes éticos que tienen los abogados con los "clientes" parten de la premisa, precisamente, de la relación abogado-cliente. Esta relación abogado-cliente surge "cuando el cliente acude al abogado a requerir sus servicios profesionales para que lo asesore o lo represente en un asunto jurídico".[29] Coincidimos con el profesor Steidel Figueroa en que para que se produzca esta relación se requiere una expectativa en el cliente, que esté apoyada en datos objetivos, de que el abogado asesorará o representará al cliente.[30] Así, establecer la existencia de una relación abogado-cliente es una determinación de hechos que debe hacerse caso a caso.[31]

Por otro lado, como es sabido, el contrato de servicios profesionales de un abogado no es más que una variante del contrato de arrendamiento de servicios. Por estar revestido de un alto contenido ético, lo hemos catalogado como un contrato *sui generis*.[32] No obstante, en nuestro ordenamiento jurídico, el ámbito y las normas generales que rigen los honorarios de abogado están

---

[28] In re Suárez Jiménez, 192 DPR 152, 162 (2014), al citar con aprobación a S. Steidel Figueroa, Ética y responsabilidad disciplinaria del abogado, Ed. Publicaciones JTS, 2010, pág. 253.

[29] In re Belén Trujillo, 126 DPR 743, 756 (1991).

[30] S. Steidel Figueroa, op. cit., pág. 119. Véanse, además: ABA/BNA. Lawyers' Manual on Prof'l Conduct, sec. 31:101 (2012); I. A. Minnot, The Attorney-Client Relationship: Exploring the Unintended Consequences of Inadvertent Formation, 86 U. Det. Mercy L. Rev. 269 (2009).

[31] ABA/BNA. Lawyers' Manual on Prof'l Conduct, *supra*.

[32] In re Franco Rivera, *supra*, pág. 264.

contenidas en el Canon 24 del Código de Ética Profesional,

*supra*. A estos efectos, este canon dispone lo siguiente:

> La fijación de honorarios profesionales debe regirse siempre por el principio de que nuestra profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucro. Al fijar el valor de los honorarios, deben considerarse los siguientes factores: (1) el tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso; (2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes; (3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares; (4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado; (5) la contingencia o certeza de la compensación; y (6) la naturaleza de la gestión profesional, si es puramente casual o para un cliente constante.

Ahora bien, el legislador puede imponer o limitar de forma expresa los honorarios de abogado, en aras de promover determinada política pública.[33] Este es el caso de la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 LPRA sec. 3114 *et seq*. Esta ley prohíbe a los abogados cobrar directamente sus honorarios a los empleados que reclamen contra sus patronos.[34] En caso de que al empleado se le conceda una compensación al amparo de legislación laboral recaerá sobre el patrono el pago de los honorarios

---

[33] Véase <u>Hernández Maldonado v. Taco Maker</u>, 181 DPR 281 (2011).

[34] Art. 1 de la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 LPRA sec. 3114.

de abogado.[35] Por ello, se estableció expresamente que son nulos todos los contratos, los convenios o los acuerdos en que trabajadores o empleados se obliguen directa o indirectamente a pagar honorarios a sus abogados en casos de reclamaciones judiciales o extrajudiciales contra sus patronos; bien sea al amparo de la legislación laboral de Puerto Rico, la legislación federal o en virtud de un convenio colectivo, por resultar contrarios al orden público.[36] Esto se debe a que permitir el cobro de honorarios directamente a los trabajadores o empleados que se vean en la necesidad de reclamarle a sus patronos equivaldría a reducir el valor de su trabajo en la cantidad que paguen a sus abogados. Por tal razón, en la referida pieza legislativa, se declaró que la política pública del Gobierno de Puerto Rico es proteger a los trabajadores y empleados contra reducciones en el valor de su trabajo.[37] Precisamente, en In re Franco Rivera, 169 DPR 237 (2006), tuvimos la oportunidad de aplicar la referida pieza legislativa en el marco de un proceso disciplinario. Allí suspendimos a un abogado del ejercicio de la profesión por el término de tres años por haber incumplido con esta clara prohibición de ley, entre otras infracciones.

Por último, el Canon 38 del Código de Ética Profesional, *supra*, establece que "el abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del

---

[35] Art. 2 de la Ley Núm. 402, *supra*, 32 LPRA sec. 3115.

[36] In re Franco Rivera, *supra*; Art. 3 de la Ley Núm. 402, *supra*, 32 LPRA sec. 3116.

[37] Art. 1 de la Ley Núm. 402, *supra*, 32 LPRA sec. 3114.

honor y dignidad de su profesión, aunque al así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". Es por ello que hemos señalado que "por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen".[38] De hecho, la clase togada tiene el deber de evitar que sus actuaciones den margen a la más leve sospecha de impropiedad.[39]

Establecido el marco doctrinal aplicable, pasamos a determinar si los querellados incurrieron en las violaciones imputadas.

### III

Luego de examinar detalladamente las alegaciones de las partes junto a la prueba contenida en el expediente, la Comisionada Especial concluyó que los licenciados Otero Calero y Pacheco Gómez violaron las normas éticas señaladas. Coincidimos con sus conclusiones.

A. *Primer cargo: Los licenciados Otero Calero y Pacheco Gómez violaron el Canon 24 de Ética Profesional, al acordar y recibir honorarios pagados por la promovente, contrario a lo dispuesto en el ordenamiento jurídico laboral de nuestra jurisdicción.*

El licenciado Pacheco Gómez sostuvo que, como asociado del Bufete, estaba autorizado a redactar contratos con los clientes de la oficina, lo cual era una gestión de forma. Manifestó, además, que la querellante acordó con el bufete trabajar un caso de daños y perjuicios en la esfera local

---

[38] In re Guemárez Santiago, *supra*, pág. 620.

[39] In re Pagani Padró, 198 DPR 812, 824 (2017).

pero que, luego de orientarle, esta optó por presentar su reclamación en el foro federal. Arguyó que, ante esta elección, era necesario presentar una querella inicial en la EEOC. Por su parte, el licenciado Otero Calero afirmó que la violación al Canon 24, *supra*, no era sostenible ya que los servicios profesionales prestados no fueron para la defensa de trabajadores o empleados que reclamen contra sus patronos al amparo de leyes laborales.[40]

En virtud de lo dispuesto en el Canon 24 del Código de Ética Profesional, a pesar del derecho de los abogados a recibir una compensación razonable por sus servicios, reiteradamente hemos reconocido que al iniciar una gestión profesional la clase togada debe tener presente que la profesión legal no es un mero negocio con fines de lucro.[41] Además, como mencionáramos, uno de los factores dispuestos en el Canon 24, *supra*, se refiere a los beneficios que el cliente ha de derivar de los servicios del abogado.

Surge de la prueba que las labores desplegadas por los letrados no rindieron beneficio alguno en favor de su cliente. Quedó igualmente probado que la querellante pagó en costas y honorarios la suma de $ 3,887.50. Incluso, en el caso de autos se acordó el pago por la querellante de honorarios contingentes adicionales equivalentes a un 33 %. Coincidimos con la Procuradora General y la Comisionada Especial en que este pago es un claro ejemplo de la reducción en el valor del trabajo del obrero que busca

---

[40] *Contestación a la querella*, págs. 2-3.

[41] In re Franco Rivera, *supra,* pág. 265; In re Rivera Rivera, 171 DPR 942, 945 (2006); In re Rodríguez Mercado, 165 DPR 630, 642 (2005).

proteger la Ley Núm. 402, *supra*. La prohibición contenida en la Ley Núm. 402 es clara. Consecuentemente, tanto el acuerdo como el pago de los honorarios iniciales que la querellante hiciera al Bufete Otero y Asociados están prohibidos y contravienen lo establecido en la ley. No hay duda de que el Canon 24, *supra*, fue infringido por ambos abogados y procede la devolución del dinero pagado ilegalmente por la querellante.

**B. *Segundo y tercer cargo: Los licenciados Otero Calero y Pacheco Gómez incumplieron con lo dispuesto en los Cánones 12 y 18 de Ética Profesional al no ser competentes ni diligentes durante el trámite de la representación legal de la promovente.***

Ciertamente, los letrados no fueron competentes ni diligentes en la tramitación de los casos de la señora Rosa Santos. El caso que se tramitaba ante el Tribunal Federal contra PRCH, por conducto del licenciado Otero Calero, fue desestimado sin perjuicio el 1 de agosto de 2013. Posteriormente, el 10 de septiembre de ese año la querellante remitió un correo electrónico al licenciado Pacheco Gómez en el cual indicó que desde octubre de 2012 no recibía información alguna de parte de ellos. No fue hasta el 18 de septiembre de 2013 que el licenciado Pacheco Gómez le contestó e indicó, por primera vez, que desde el mes de noviembre de 2012 no trabajaba con el Bufete Otero y Asociados. Asimismo, con posterioridad a la desestimación de las reclamaciones contra los doctores, las demandas no fueron presentadas en el foro estatal. Ello, a pesar de las comunicaciones sostenidas a esos efectos mediante correo

electrónico entre la querellante y el licenciado Pacheco Gómez. Es decir, al tiempo que la señora Rosa Santos creía que su abogado procuraba sus reclamaciones en el Tribunal General de Justicia en Puerto Rico, el licenciado Pacheco Gómez ni siquiera había informado a la querellante que ya no trabajaba en el Bufete Otero y Asociados y que no continuaría la encomienda asumida. De esta forma, el licenciado Pacheco Gómez abandonó y desatendió negligentemente las causas legales de la querellante.

Por su parte, el licenciado Otero Calero incumplió con las órdenes del foro federal, al punto de ser multado por no presentar el informe con antelación al juicio y poner en peligro la reclamación de la señora Rosa Santos. Este comportamiento constituyó una dilación injustificada y una falta de diligencia evidente en las reclamaciones de su clienta.

Aunque el licenciado Otero Calero arguye que dicha dilación resultó de la ausencia de la señora Rosa Santos, no nos convence su alegación. En todo caso, ante tal escenario, correspondía al letrado notificar con premura la situación al foro federal y solicitar la renuncia a la representación legal. No lo hizo. Por el contrario, el licenciado Otero Calero acordó con el demandado PRCH el desistimiento del caso, sin consultar con la señora Rosa Santos. En consecuencia, tanto el licenciado Otero Calero como el licenciado Pacheco Gómez infringieron el Canon 12 y 18 del Código de Ética Profesional.

### C. Cuarto cargo: El licenciado Pacheco Gómez violó el Canon 19 y 20 de Ética Profesional al renunciar indebidamente a la representación legal de la promovente.

El licenciado Pacheco Gómez adujo, entre otras cosas, que este no era representante legal de la querellante y su labor se limitó al trámite ante la EEOC. Arguyó que, aunque intentó comunicarse con la señora Rosa Santos en múltiples ocasiones, fue imposible contactarla y que ésta no manifestó interés en el caso.

El deber de un abogado de mantener informado a su cliente es un elemento indispensable de la relación entre el abogado y su cliente. Este deber surge desde el momento en que el abogado acepta la encomienda de su cliente, y cesa cuando finaliza la representación legal asumida.[42] Es por ello que, antes de renunciar a la representación legal, el abogado debe tomar aquellas medidas razonables que eviten el perjuicio de los derechos de su cliente.

Como hemos mencionado, la relación abogado-cliente se determina caso a caso. El hecho de que un abogado labore en asociación con otro abogado ─en este caso el licenciado Pacheco Gómez trabajaba como asociado del Bufete─ no impone una responsabilidad automática al abogado por cualquier intervención que tenga en un caso en el que otro abogado es el abogado principal. Para determinar si un abogado es responsable hay que evaluar en cada caso la relación que este tiene con el cliente, las funciones que

---

[42] In re Nieves Nieves, 181 DPR 25, 39 (2011).

realizó o realizará y la expectativa que tiene ese "cliente" sobre la participación del abogado en el caso.

Si bien el licenciado Otero Calero representó a la señora Rosa Santos en el foro judicial federal, por estar admitido a ejercer en dicho foro, y la participación del licenciado Pacheco Gómez ante la EEOC había culminado, del expediente surge que en este caso este último la orientó sobre la posibilidad de presentar un pleito estatal contra los doctores. Además, de los correos electrónicos intercambiados entre ambos se infiere que la señora Rosa Santos tenía la expectativa y la confianza de que el licenciado Pacheco Gómez estaba a cargo y llevaba los casos estatales. De hecho, la señora Rosa Santos le remitió un correo electrónico el 25 de junio de 2012 en el cual expuso sus términos para transigir las reclamaciones federales contra PRCH, así como las reclamaciones estatales contra los doctores, antes de que se radicaran contra estos en el foro estatal. De esta forma, aunque el licenciado Pacheco Gómez era asociado del Bufete y el abogado principal del caso federal era el licenciado Otero Calero, la interacción y las comunicaciones que tuvieron el licenciado Pacheco Gómez y la señora Rosa Santos en cuanto a los casos estatales demuestran la existencia de una relación abogado-cliente. Por todo lo anterior, el licenciado Pacheco Gómez debió notificar a su clienta de la renuncia al Bufete.

A pesar de lo anterior, el licenciado Pacheco Gómez renunció como abogado del Bufete durante el verano de 2012 y no notificó de ello a la querellante. Conforme surge del

expediente, el licenciado Pacheco Gómez esperó más de un año ⸺porque la querellante tuvo la iniciativa de comunicarse con él para requerirle información sobre el estado de sus reclamaciones⸺ para notificarle a la señora Rosa Santos que ya no intervendría en sus asuntos legales debido a que no continuaba como asociado en el Bufete Otero y Asociados. El letrado no expone justificación válida para interrumpir la efectiva comunicación electrónica que mantenía con su clienta y no notificarle adecuadamente de su renuncia. Así pues, el letrado abandonó los asuntos de la querellante sin haberle indicado nada sobre los términos y el estado de las reclamaciones estatales contra los doctores, a pesar de que esta última pensaba que la tramitación ante el foro estatal estaba a su cargo. De esa forma se hizo constar en las comunicaciones que le cursó mediante correos electrónicos el 25 de junio de 2012 y el 10 de septiembre de 2013.

En ese sentido, no albergamos duda en cuanto a la clara existencia de una relación profesional de abogado y cliente entre el licenciado Pacheco Gómez y la señora Rosa Santos. Ante ello, con su proceder, el licenciado Pacheco Gómez infringió los Cánones 19 y 20 del Código de Ética Profesional.

> D. *Quinto cargo: El licenciado Otero Calero violó el Canon 19 de Ética Profesional al no realizar actos ni gestiones afirmativas tendentes a mantener a la promovente informada sobre el desenlace de su reclamación federal.*

El licenciado Otero Calero señaló que no pudo comunicarse telefónicamente con la querellante, razón por la cual acordó con el demandado PRCH desistir del caso federal.[43] No obstante, conforme quedó probado, las comunicaciones electrónicas con la señora Rosa Santos eran efectivas. Ahora bien, no surge prueba de intento alguno de parte del licenciado Otero Calero para informarle por ese medio la situación del caso. El letrado tampoco informó al Tribunal de Distrito sobre la alegada falta de comunicación con la querellante. Es preciso mencionar que el propio abogado admitió que la última comunicación que se dirigió a la querellante fue el 11 de mayo de 2011, cuando el licenciado Pacheco Gómez le solicitó cierta información para la tramitación del caso.[44]

Sin duda, como dueños del caso, el dictamen de desestimación de un foro judicial es un asunto que debe informarse inmediatamente a los clientes.[45] Sin embargo, el licenciado Otero Calero no mantuvo informada a la querellante de las gestiones realizadas ni del desarrollo de los asuntos a su cargo. Tampoco cumplió con las instrucciones de su clienta en cuanto a sus condiciones para transigir contra PRCH, ni le notificó sobre la desestimación de la demanda en el foro federal. No fue

---

[43] Véase *Contestación a Querella*; *Réplica al Informe de la Comisionada Especial* de 15 de septiembre de 2014. Adviértase, además, que el Procurador Auxiliar remitió a la querellante un correo electrónico el 2 de julio de 2014, a la misma dirección electrónica que obra en autos, y recibió una contestación por parte de la querellante en menos de 24 horas. Informe de la Oficina de la Procuradora General, Anejo 1, pág. 1.

[44] Véase íd., Anejo 5, pág. 17.

[45] Véase In re Cardona Ubiñas, 146 DPR 598, 605 (1998).

hasta que la señora Rosa Santos se comunicó con el Bufete, para reclamarle sobre su falta en mantenerla informada sobre el trámite de su caso, que se le informó del dictamen judicial. Ante la patente ausencia de actos o gestiones afirmativas por parte del licenciado Otero Calero en mantener informada a la señora Rosa Santos sobre sus reclamaciones, es forzoso concluir que el licenciado Otero Calero infringió el Canon 19 del Código de Ética Profesional.

> **E. Sexto cargo: Los licenciados Otero Calero y Pacheco Gómez violaron el Canon 38 de Ética Profesional al no conducirse de manera digna ni honorable ante la promovente, incurriendo así en apariencia de conducta profesional impropia, según los resultados de la investigación de la queja de epígrafe.**

Por último, hemos establecido que es deber de todo letrado admitido al ejercicio de la profesión evitar la apariencia de conducta impropia debido a su efecto dañino sobre la imagen, la confianza y el respeto de la ciudadanía hacia la profesión legal.[46] No podemos pasar por desapercibido que los actos del licenciado Otero Calero y del licenciado Pacheco Gómez se apartaron de aquellos que exaltan el honor y la dignidad de la profesión. La conducta desplegada por los licenciados Otero Calero y Pacheco Gómez incumple con el mandato establecido en el Canon 38 del Código de Ética Profesional.

En primer lugar, los letrados mantuvieron a la señora Rosa Santos ajena y desinformada de los asuntos del caso en ambas jurisdicciones. En segundo lugar, los abogados

---

[46] In re Gordon Menéndez I, 171 DPR 210, 215 (2007).

acordaron y cobraron honorarios iniciales para presentar una reclamación laboral de forma expresamente prohibida en nuestro ordenamiento jurídico. Además, el licenciado Pacheco Gómez no notificó adecuada y oportunamente a la querellante que había renunciado en el Bufete ni le apercibió sobre los términos y la situación de sus posibles reclamaciones en el foro estatal. Por su parte, el licenciado Otero Calero no realizó los actos necesarios para mantener a la querellante informada sobre el desenlace de su caso federal. Más aún, desistió de una reclamación sin el consentimiento de su cliente. Este proceder no está a la altura en que debe conducirse y desempeñarse en sus funciones la clase togada e incumple crasamente con lo dispuesto en el Canon 38 del Código de Ética Profesional, *supra*.

A la luz de los hechos y el derecho aplicable, concluimos que las actuaciones del licenciado Otero Calero fueron contrarias a los Cánones 12, 18, 19, 24 y 38 y las del licenciado Pacheco Gómez infringieron los Cánones 12, 18, 19, 20, 24 y 38 del Código de Ética Profesional, *supra*.

**IV**

Luego de reconocer el incumplimiento de ambos abogados, queda por determinar la correspondiente sanción disciplinaria. Sobre este particular es importante ponderar los factores siguientes: 1) la reputación del abogado en su comunidad; 2) su historial; 3) si es su primera falta; 4) si ninguna parte resultó perjudicada con su proceder; 5) la aceptación de la falta y su arrepentimiento; 6) si es un

comportamiento aislado; y 7) cualquier otra consideración, ya sea atenuante o agravante, que surja de los hechos particulares del caso.[47]

La Comisionada Especial expresó que en el caso de acoger su informe, se evaluaran como atenuantes las circunstancias siguientes: 1) ninguno de los dos querellados había tenido querella alguna antes de la que nos ocupa; 2) ambos letrados prestan servicios legales gratuitos a la comunidad; 3) que, como cuestión de hecho, el Bufete Otero y Asociados ha ofrecido, durante años, asesoría legal gratuita a los inmigrantes referidos del Consulado General de la República Dominicana e Islas

---

[47] In re Irizarry Rodríguez, 193 DPR 633, 668 (2015). Por ejemplo, en In re Nazario Díaz, 195 DPR 623 (2016), suspendimos a un abogado del ejercicio de la profesión por el término de un año en razón de infringir, entre otros, los Cánones 18, 19 y 38 del Código de Ética Profesional. Allí, la desidia e incompetencia del letrado conllevaron la desestimación de los casos de sus clientes ante el Tribunal de Quiebras.

En In re Vázquez Bernier, 198 DPR 459 (2017), suspendimos a un letrado del ejercicio de la abogacía por el término de seis meses. En aquella ocasión, el abogado violó, entre otros, los cánones 12, 18, 19, 20 y 38 del Código de Ética Profesional. Entre sus conductas reprochables, el abogado no informó a su cliente la desestimación de su caso, provocada por su actitud de patente desidia, ni renunció oportunamente cuando se percató, según él, que su cliente no cooperaba con la tramitación del pleito.

De igual modo, en In re Rosario Vázquez, 197 DPR 237 (2017), suspendimos a otro abogado del ejercicio de la profesión por el término de tres meses por infringir los Cánones 18 y 19 del Código de Ética Profesional, supra. Allí, el letrado dejó transcurrir un año sin realizar gestión alguna en el caso de su cliente, a pesar de haber tenido la documentación necesaria para ello, lo cual provocó la desestimación sumaria del caso, hecho que no informó a su cliente.

En In re Muñoz Fernós, 184 DPR 679 (2012), suspendimos a un letrado del ejercicio de la notaría por el término de noventa días por infringir, entre otros, los Cánones 19 y 24 del Código de Ética Profesional, supra. En aquella ocasión, el abogado cobró $ 3,100 para hacer un expediente de dominio que permitiera la inscripción del inmueble en el Registro de la Propiedad. Sin embargo, el trabajo consistió en meramente redactar un documento privado. Decidimos que la cantidad cobrada por el abogado a su clienta no se facturó en consideración al trabajo realizado, conducta que infringió el Canon 24, supra.

Vírgenes; y 4) que el Bufete, a la fecha del informe, continúa como parte del Programa Pro Bono del Colegio de Abogados de Puerto Rico.

A pesar de que la Comisionada Especial señaló esos atenuantes, en Salas Cohen v. Otero Calero, 115 DPR 355 (1984), se presentó una queja contra el licenciado Otero Calero. En aquella ocasión censuramos enérgicamente al letrado porque remitió por correo una demanda en cobro de dinero sin que previamente se hubiese iniciado trámite alguno ante el Tribunal de Primera Instancia. Sin embargo, en vista de que el licenciado Otero Calero reconoció haber incurrido en la conducta impropia imputada, este Tribunal resolvió el asunto sin trámite ulterior.

Somos conscientes de que el licenciado Otero Calero lleva treinta y siete años en el ejercicio de la profesión legal y que, como cuestión de hecho, presta una diversidad de servicios legales gratuitos a la comunidad. Sin embargo, su tiempo en la profesión debe acarrear un grado de sabiduría y de competencia profesional considerable. Precisamente, por el tiempo que lleva como abogado debió conocer que la conducta desplegada faltaba y se apartaba considerablemente de nuestros preceptos éticos.

## V

Por los fundamentos expuestos, *ordenamos la suspensión de la abogacía y la notaría de los licenciados Otero Calero y Pacheco Gómez por un término de seis meses. Se les notifica que su fianza notarial queda automáticamente cancelada. La fianza se considerará buena y*

válida por tres años después de su terminación en cuanto a actos realizados por el señor Otero Calero y el señor Pacheco Gómez durante el periodo en que la misma estuvo vigente.

El señor Otero Calero y el señor Pacheco Gómez deberán notificar a todos sus clientes de su inhabilidad de seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados, devolverles los expedientes de casos pendientes e informar inmediatamente de su suspensión a los foros judiciales y administrativos en los que tengan algún caso pendiente. Además, tienen la obligación de acreditar y certificar a este Tribunal el cumplimiento con lo anterior en un término de treinta días contados a partir de la notificación de esta Opinión per curiam y Sentencia. Por su parte, se ordena al Alguacil de este Tribunal incautar inmediatamente la obra protocolar y el sello notarial del señor Otero Calero, así como los del señor Pacheco Gómez, y entregarlos al Director de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Ordenamos, además, que en un término de treinta días los señores Otero Calero y Pacheco Gómez devuelvan a la señora Rosa Santos la suma de $ 3,000.00. Los señores Otero Calero y Pacheco Gómez tienen la obligación de acreditar y certificar a este Tribunal el cumplimiento con lo anterior en un término de treinta días, contados a partir de la notificación de esta Opinión per curiam y Sentencia.

*Notifíquese personalmente esta Opinión per curiam y Sentencia al Sr. George Otero Calero y al Sr. Fabio J. Pacheco Gómez a través de la Oficina del Alguacil de este Tribunal.*

*Se dictará sentencia de conformidad.*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | |
|---|---|---|
| George Otero Calero (TS-6,971) | CP-2015-0007 | *Conducta Profesional* |
| Fabio J. Pacheco Gómez (TS-16,745) | | |

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de junio de 2018.

Por los fundamentos enunciados en la Opinión *per curiam* que antecede, la cual se hace formar parte de esta Sentencia, ordenamos la suspensión de la abogacía y la notaría del Lcdo. George Otero Calero y el Lcdo. Fabio J. Pacheco Gómez por un término de seis (6) meses. Se les notifica que su fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por tres (3) años después de su terminación en cuanto a actos realizados por el señor Otero Calero y el señor Pacheco Gómez durante el periodo en que la misma estuvo vigente.

El señor Otero Calero y el señor Pacheco Gómez deberán notificar a todos sus clientes de su inhabilidad de seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados, devolverles los expedientes de casos pendientes e informar inmediatamente de su suspensión a los foros judiciales y administrativos en los que tengan algún caso pendiente. Además, tienen la obligación de acreditar y certificar a este Tribunal el cumplimiento con lo anterior en un término de treinta (30) días contados a partir de la notificación de esta Opinión *per curiam* y Sentencia. Por su parte, se ordena al Alguacil de este Tribunal incautar inmediatamente la obra protocolar y el sello notarial del señor Otero Calero, así como los del señor Pacheco Gómez, y entregarlos al Director de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Ordenamos, además, que en un término de treinta (30) días los señores Otero Calero y Pacheco Gómez devuelvan a la señora Rosa Santos la suma de $ 3,000.00. Los señores Otero Calero y Pacheco Gómez tienen la obligación de acreditar y certificar a este Tribunal el cumplimiento con lo anterior en un término de treinta (30) días, contados a partir de la notificación de esta Opinión *per curiam* y Sentencia.

Notifíquese personalmente esta Opinión *per curiam* y Sentencia al Sr. George Otero Calero y al Sr. Fabio J. Pacheco Gómez a través de la Oficina del Alguacil de este Tribunal.

Lo pronunció y manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez no intervino.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo