EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Luis Rafael Rivera Rodríguez | 2019 TSPR 140 <br><br> 202 DPR _____ |

Número del Caso: CP-2016-10
(TS-7373)

Fecha: 31 de julio de 2019

Oficina del Procurador General:

Lcda. Karla Z. Pacheco Álvarez
Subprocuradora General

Lcda. Minnie H. Rodríguez
Procuradora General Auxiliar

Abogados de la parte querellada:

Lcdo. Guillermo Figueroa Prieto
Lcdo. Mario A. Rodríguez

Comisionada Especial:

Hon. Isabel Llompart Zeno

Conducta Profesional: La suspensión será efectiva el 15 de agosto de 2019, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Luis Rafael Rivera Rodríguez      CP-2016-10      Conducta
       (TS-7373)                               Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 31 de julio de 2019.

El Lcdo. Luis Rafael Rivera Rodríguez (licenciado Rivera o querellado) fue admitido al ejercicio de la abogacía el 18 de noviembre de 1981 y a la práctica de la notaría el 28 de enero de 1982. Debido a que el licenciado Rivera se distanció de los Cánones 9, 12, 18, 19, 20, 23, 24 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, su comportamiento amerita la suspensión del ejercicio de la abogacía y la notaría por el término de dos (2) meses. Veamos.

## I

### A. Hechos que dieron lugar a la queja

El 22 de junio de 2001, la Sra. Rosa Estela Moreno Álvarez (señora Moreno o promovente) contrató

con el licenciado Rivera para que fungiera como su representante legal en un caso laboral. En específico, la señora Moreno interesaba demandar a la Compañía Precision Security Guard and System, Inc. por despido injustificado y discrimen durante su embarazo. La promovente le pagó al querellado mil dólares ($1,000.00) en concepto de *retainer fee*. Además, pactaron mediante contrato que se pagaría el treinta y tres y un tercio por ciento ($33\frac{1}{3}\%$) como honorarios contingentes de abogado. Así las cosas, el 5 de julio de 2001, según acordado, el licenciado Rivera presentó una demanda en el caso Rosa Estela Moreno Álvarez v. Precision Security Guard and System, Inc., Civil Núm. KPE-2001-1352, ante el Tribunal de Primera Instancia, Sala Superior de San Juan. El 7 de julio de 2001 se emplazó a la parte demandada.

Luego de varios trámites procesales, que incluyeron la contestación a la demanda y descubrimiento de prueba, el 23 de septiembre de 2002 el foro primario dictó una orden concediéndole diez (10) días al licenciado Rivera para que expresara por escrito las razones por las cuales no debía desestimar el caso por inactividad en los últimos seis (6) meses. El foro primario quedó insatisfecho con las explicaciones del licenciado Rivera, por lo cual solicitó una aclaración. El 26 de diciembre de 2002 el querellado presentó una moción donde explicó que, por error involuntario, el expediente de la señora Moreno había sido relegado al grupo de expedientes inactivos, razón por la

cual no había efectuado trámite alguno ante ese foro. Informó, además, que estaba realizando gestiones para tomar deposiciones, obtener documentos y entrevistar testigos. Para evitar la desestimación del caso, sugirió al tribunal que se le impusiera una sanción de cien dólares ($100.00). A tono con lo anterior, el Tribunal de Primera Instancia ordenó el pago de la referida sanción y señaló la primera vista del caso.

A la vista del 2 de abril de 2003, el licenciado Rivera no compareció, ni se excusó por escrito. Estuvo presente su paralegal, el Sr. Rubén Ramos Peña (señor Ramos), quien informó que el abogado se encontraba en el Tribunal Federal. El foro primario señaló entonces vista para el 6 de agosto de 2003.

El 29 de julio de 2003, el licenciado Rivera presentó una moción con su parte del *Informe de conferencia entre abogados*.

En la vista pautada para el 6 de agosto de 2003 no se personó el abogado de la parte demandada, ni el licenciado Rivera. No obstante, volvió a comparecer el señor Ramos y expresó que el querellado se encontraba en el Tribunal de Caguas. Así las cosas, el foro primario dictó una orden para que el licenciado Rivera mostrara causa por su incomparecencia.

A la tercera vista, señalada para el 10 de diciembre de 2003, compareció por primera vez el licenciado Rivera. En la misma, el Tribunal de Primera Instancia señaló vista

para el 12 de febrero de 2004, a lo cual el querellado no manifestó conflicto alguno. El 9 de febrero de 2004, previo a la celebración de la cuarta vista, el licenciado Rivera presentó una moción solicitando suspensión con el propósito de culminar el descubrimiento de prueba. Añadió, que para el 12 de febrero de 2004 tenía pautada una deposición en otro caso. Sin embargo, no acompañó su moción con evidencia que demostrara que, en efecto, se citó para dicha deposición.

A la vista del 12 de febrero de 2004 compareció el Lcdo. Jan Paul Vissepó Garriga (licenciado Vissepó), en lugar del licenciado Rivera, e informó que el querellado se encontraba en California atendiendo asuntos relacionados a otro litigio. El foro primario le ordenó al querellado que informara en diez (10) días el futuro procesal del caso y que pagara, en cinco (5) días, las sanciones de cien y trescientos dólares ($100.00 y $300.00) que le había impuesto anteriormente.

El 30 de junio de 2004, es decir, cuatro (4) meses después, el licenciado Rivera presentó una moción consignando el monto de las sanciones. Explicó que esperaba por unos documentos que la señora Moreno le debía entregar y que la parte demandada le había manifestado su intención de deponer a dos testigos. Además, solicitó señalamiento de vista sin sugerir alguna fecha en específico.

Así las cosas, el 12 de julio de 2004 el foro primario señaló una quinta vista para el 22 de noviembre de 2004. No obstante, el 18 de noviembre de 2004 el querellado presentó moción solicitando vista. A la vista del 22 de noviembre de 2004 no comparecieron las partes. En consecuencia, el Tribunal de Primera Instancia le impuso al licenciado Rivera una sanción de quinientos dólares ($500.00). Éste, mediante moción, alegó que no había sido citado para la vista del 22 de noviembre de 2004.[1] No obstante, el 29 de diciembre de 2004 el foro primario le ordenó el pago de la sanción impuesta en un término de diez (10) días.

El 1 de febrero de 2005 el licenciado Rivera solicitó reconsideración de la sanción y solicitó vista. El 4 de febrero de 2005 el foro primario denegó la solicitud de reconsideración. Así pues, el 12 de mayo de 2005 el querellado consignó la sanción de quinientos dólares ($500.00) que le fue impuesta por el Tribunal de Primera Instancia, se excusó nuevamente por su incomparecencia y solicitó un nuevo señalamiento para vista. Ésta fue señalada para el 14 de septiembre de 2005 mediante *Orden y citación para la conferencia sobre estado de los procedimientos*.

Nuevamente, el 8 de septiembre de 2004 el licenciado Rivera solicitó la suspensión de la vista. En esta ocasión

---

[1] Sin embargo, surge del expediente que la vista, en efecto, sí le fue notificada el 21 de julio de 2004.

también alegó, sin presentar evidencia, que en esa fecha tenía que asistir a otra vista en el Tribunal de Guayama. La sexta vista se celebró en la fecha pautada y el querellado volvió a ausentarse. Compareció nuevamente su paralegal, quien expresó que el querellado se encontraba en el Tribunal de Guayama. De manera que, el foro primario reseñaló la vista para el 13 de octubre de 2005.

Se celebró la séptima vista según señalada, pero el licenciado Rivera no compareció. Se volvió a presentar su paralegal, quien le informó al tribunal que el querellado venía de camino. Sin embargo, el foro primario no lo excusó y dictó orden de mostrar causa por la cual no debía imponerle otra sanción de quinientos dólares ($500.00).

En cumplimiento con lo anterior, el licenciado Rivera presentó una moción disculpándose. Manifestó que el día de la vista había estado en la cárcel federal y que al salir se encontró un tráfico vehicular enorme. Alegó, además, que cuando llegó al tribunal confundió la Sala 505 con la 805 y que al comunicarse con su paralegal éste le informó que la vista ya se había celebrado sin su presencia. En consecuencia, el foro primario ordenó la celebración de la conferencia con antelación al juicio, así como la celebración de la octava vista para el 2 de marzo de 2006.

A la octava vista comparecieron por el querellado su paralegal y el licenciado Vissepó. Este último informó, sin presentar evidencia, que el licenciado Rivera se encontraba en el Tribunal Federal. Por su parte y a

preguntas del tribunal, el señor Ramos expresó que las ausencias del querellado se debían a su gran cúmulo de trabajo. Así las cosas, el foro primario le impuso al licenciado Rivera una sanción de mil dólares ($1,000.00) a ser pagada en cinco (5) días y ordenó que se notificara la minuta de la vista a la señora Moreno.

El 9 de marzo de 2006, el querellado solicitó al foro primario que reconsiderara la sanción impuesta. Arguyó que le pidió al licenciado Vissepó que lo sustituyera en la vista debido a que en esa mañana había sido citado para comparecer al Tribunal Federal. El Tribunal de Primera Instancia denegó su solitud de reconsideración.

Finalmente, el 18 de abril de 2006 el licenciado Rivera solicitó al foro primario que aceptara su renuncia en el caso, la cual dicho foro aceptó. Además, presentó una moción mediante la cual solicitó la continuación de los procedimientos y un señalamiento de vista. Según surge del expediente del caso, éstas fueron las últimas mociones presentadas por el querellado en el caso Civil Núm. KPE-2001-1352.

Posteriormente, el Lcdo. Ovidio Zayas Pérez (licenciado Zayas) asumió la representación legal de la señora Moreno hasta que, el 21 de octubre de 2008, el foro primario desestimó el caso con perjuicio por inactividad.

## B. Trámite Disciplinario

Inconforme con la falta de diligencia del licenciado Rivera y la eventual desestimación de su caso, el 1 de

febrero de 2009 la señora Moreno presentó ante este Tribunal la Queja Núm. AB-2009-29 contra el licenciado Rivera y el licenciado Zayas.[2] En la misma, alegó que contrató al querellado para que la representara en un **caso laboral**, por lo que le adelantó mil dólares ($1,000.00) de *retainer fee* y firmó un contrato para pagarle el treinta y tres y un tercio por ciento ($33^1/_3$%) de honorarios. Manifestó que el querellado presentó una demanda contra la compañía Precision Security Guards and System, Inc., en la cual solicitó la suma de $461,000.00, por hostigamiento laboral durante el embarazo y despido injustificado. Arguyó que durante el periodo correspondiente a los años 2001 a 2006 el licenciado Rivera nunca compareció al foro de instancia, por lo que el tribunal le impuso sanciones económicas en varias ocasiones. Sostuvo que el querellado refirió su caso al licenciado Zayas y que ella compareció por primera vez a una vista en el foro primario por instrucciones de este último. Aseveró que el Tribunal de Primera Instancia emitió una orden para desestimar el caso, concediéndole al licenciado Zayas diez (10) días para contestar, y que al incumplir con dicho término el foro primario dictó sentencia de desestimación con perjuicio. Por último, solicitó la indemnización por los daños y angustias mentales que, alegadamente, ambos abogados le causaron por su inacción en el manejo de su caso.

---

[2] El 29 de abril de 2016 emitimos Resolución mediante la cual archivamos la queja presentada en contra del Lcdo. Ovidio Zayas Pérez (licenciado Zayas).

Según lo dispone la Regla 14(c) de nuestro Reglamento, 4 LPRA Ap. XXI-B (Supl. 2018), el 18 de marzo de 2009 la Secretaría de este Foro le remitió una carta al licenciado Rivera otorgándole un término de diez (10) días para presentar su contestación a la queja. A tono con lo anterior, el 14 de abril de 2009 el querellado reaccionó a la queja. Arguyó, en síntesis, que: (1) asumió la representación legal de la señora Moreno el 22 de junio de 2001; (2) la cantidad de mil dólares ($1,000.00) tenía el propósito de cubrir los gastos relacionados al caso y por error se le designó en el recibo como *retainer fee*; (3) le recomendó a la señora Moreno al licenciado Zayas como uno de los posibles abogados que la podía representar y que ésta no estaba obligada a contratarlo; (4) fue relevado por el Tribunal de Primera Instancia de toda responsabilidad del caso, el 8 de mayo de 2006, al aceptar su renuncia a la representación legal en el caso de la señora Moreno; (5) desde esa fecha perdió todo contacto con la promovente; y (6) el caso fue desestimado por causas no atribuibles a su participación profesional.

Contando con la posición de ambas partes, el 14 de mayo de 2009 le referimos copia del expediente a la entonces Procuradora General para la correspondiente investigación e informe a tenor de la Regla 14(d) del Reglamento de este Foro.[3]

---

[3] El 19 de agosto de 2009 la Oficina de la Procuradora General (OPG) nos presentó una *Moción informativa y en solicitud de término* mediante la cual solicitó sesenta (60) días adicionales para presentar su informe, debido a que

El 12 de diciembre de 2014 la Oficina de la Procuradora General (OPG) le concedió al licenciado Rivera un término de diez (10) días para que sometiera los siguientes documentos: copia del contrato de servicios legales que firmó con la señora Moreno; copia del desglose de horas trabajadas; y copia del desglose de los gastos incurridos en el caso de la señora Moreno.

A solicitud del licenciado Rivera,[4] la OPG extendió hasta el 30 de enero de 2015 el término para cumplir. El 9 de enero de 2015 el licenciado Rivera solicitó otra prórroga, esta vez de cinco (5) días, para localizar y someter las copias requeridas. La OPG accedió y le confirió hasta el 12 de febrero de 2015 para cumplir con sus requerimientos. Asimismo, le advirtió que esa sería la última prórroga que se le concedería. Finalmente, el 28 de febrero de 2015 el licenciado Rivera contestó el requerimiento de la OPG. Específicamente, anejó a su contestación copia de las facturas de horas trabajadas, gastos incurridos, los nombres de los testigos a los cuales les tomó deposición, así como el tiempo invertido en el caso de la señora Moreno. Sin embargo, no incluyó copia

---

el licenciado Zayas aún no había contestado las alegaciones de la promovente. En virtud de ello, mediante Resolución de 28 de agosto de 2009, le concedimos el periodo solicitado. Posteriormente, emitimos otra Resolución el 27 de junio de 2013 otorgándole a la OPG un término adicional de veinte (20) días para presentar el correspondiente informe.

[4] El 9 de enero de 2015 el Lcdo. Luis Rafael Rivera Rodríguez (licenciado Rivera) le solicitó a la OPG una extensión de dos (2) semanas para someter su contestación a los requerimientos de esta última. Argumentó que se encontraba preparándose para una vista pautada en el foro federal fuera de Puerto Rico.

del contrato de servicios legales pactado con la señora Moreno.[5]

El 5 de mayo de 2015, la OPG presentó su Informe. Indicó que del recibo suscrito por el licenciado Rivera surge que la señora Moreno le pagó mil dólares ($1,000.00) en concepto de *retainer fee*. Lo anterior, en contravención con el Art. 1 de la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 LPRA sec. 3114, y con los Cánones 20 y 24 de Ética Profesional. Señaló que, según la mencionada ley, la señora Moreno tenía derecho a recobrar dos mil dólares ($2,000.00). Es decir, el doble de lo cobrado indebidamente como penalidad. Concluyó que el licenciado Rivera pudo incurrir, además, en violación al Canon 24 al pactar el cobro del treinta y tres y un tercio por ciento ($33^1/_3$%) de honorarios contingentes, cuando nuestro ordenamiento jurídico dispone que en casos laborales el abogado podrá cobrar esta clase de honorarios hasta un veinticinco (25%).

De otra parte, según el Informe, el licenciado Rivera no ejerció toda la diligencia necesaria para responder al requerimiento de la OPG. Expresó que constituye una violación al Canon 9 de Ética Profesional el que un abogado desatienda los apercibimientos u órdenes de este Tribunal, así como los requerimientos de cualquier entidad a la que

---

[5] Según surge del Informe presentado por la OPG, el licenciado Zayas fue quien envió dicho contrato a esta Oficina, debido a que obraba en su poder el expediente de la Sra. Rosa Estela Moreno Álvarez (señora Moreno). En el documento solamente aparece la firma de esta última, no está firmado por el licenciado Rivera y tampoco aparece espacio alguno que indique donde firmaría el abogado.

esté obligado a comparecer. Consideró, además, que el licenciado Rivera pudo haber incumplido con el Canon 12 de Ética Profesional al no ser puntual con la asistencia a las vistas ni desplegar todas las diligencias necesarias para asegurar que no se causaran indebidas dilaciones en la tramitación del caso.

Asimismo, reiteró que la conducta del licenciado Rivera al no asistir a las vistas en el foro de instancia, no informarle a la señora Moreno de los señalamientos, cobrarle un *retainer fee* en un caso laboral, honorarios contingentes en exceso de lo permitido en ley, no atender diligente y adecuadamente el caso, así como el no haber renunciado oportunamente resulta contrario a lo dispuesto en los Cánones 35 y 38 de Ética Profesional.

Por otro lado, agregó que este Tribunal no es el foro adecuado para atender la solicitud de indemnización de la señora Moreno.

Finalmente, concluyó que la conducta desplegada por el licenciado Rivera podría configurar violaciones a los Cánones 9, 18, 19, 20, 24, 35 y 38 de Ética Profesional.[6]

El 25 de septiembre de 2015 el licenciado Rivera replicó al Informe de la OPG. Sostuvo que el caso de la señora Moreno se desestimó dos (2) años y cinco (5) meses luego de

---

[6] Aunque la OPG concluyó que la conducta desplegada por el licenciado Rivera podría configurar violaciones a los Cánones 9, 18, 19, 20, 24, 35 y 38 de Ética Profesional, en el contenido de su Informe discutió también que el querellado pudo haber incumplido el Canon 12 de Ética Profesional. De otra parte, debemos señalar que, en la Querella la OPG le imputó al licenciado haber infringido los Cánones 9, 12, 18, 19, 23, 24 y 38 de Ética Profesional.

que él fuera relevado de la representación legal, y por consiguiente era imposible vincular de manera razonable la mencionada desestimación con sus actuaciones.

En cuanto a la violación imputada del Canon 12 de Ética Profesional, aceptó que se ausentó de varios procedimientos ante el Tribunal de Primera Instancia. No obstante, argumentó que siempre fue diligente al excusarse, envió las mociones pertinentes, solicitó que compañeros abogados lo sustituyeran y pagó las sanciones que se le impusieron. Reiteró que fue diligente y profesionalmente competente al reconocer que no podía continuar brindando los servicios legales a la señora Moreno de la manera requerida por los Cánones de Ética Profesional, razón por la cual solicitó el relevo del caso y le instruyó a la promovente que procurara una nueva representación legal. Añadió que la señora Moreno se reunió, consultó y prosiguió por dos (2) años y cinco (5) meses el rumbo del caso bajo otro abogado sin consultarle situación ulterior alguna.

En torno a las violaciones del Canon 19, *supra*, imputadas al licenciado Rivera, éste afirmó que: se reunió con la señora Moreno en innumerables ocasiones, elaboraron y contestaron interrogatorios, la preparó para su posible deposición y las gestiones que realizó en el caso le fueron notificadas a ésta por teléfono o mediante citación a su oficina. Además, enfatizó que, mientras la representaba, la señora Moreno nunca le presentó una queja por no estar informada de las gestiones realizadas en su caso.

En cuanto a las violaciones de los Cánones 24 y 38 que le fueron imputadas, expresó que le solicitó a la promovente la cantidad de mil dólares ($1,000.00) para cubrir los gastos del caso, pero erróneamente se denominó como *retainer fee* por personal de su oficina al preparar el correspondiente recibo y, debido a su omisión, ésto no se aclaró al momento de firmar el contrato de representación legal. Sostuvo, además, que en el caso de la promovente los gastos sobrepasaron los mil dólares ($1,000.00), por lo que era imposible concluir que ese dinero constituía un *retainer fee*, toda vez que no se le solicitó dinero adicional. En torno al acuerdo de honorarios, adujo que se pactó la cantidad del treinta y tres y un tercio por ciento ($33^{1}/_{3}$%) por error o negligencia excusable y que no existió ánimo real de procurar un pago en exceso del requerido por ley y el Derecho. Aceptó que debió ser más cuidadoso al momento de revisar el contrato, el cual era uno estándar utilizado para todo caso civil por daños y perjuicios. Planteó, además, su intención de reembolsarle a la señora Moreno los mil dólares ($1,000.00) entregados por ésta, así como una cantidad adicional de mil dólares ($1,000.00) como penalidad, además de los intereses legales aplicables.

Por último, en torno a los Cánones 9 y 35, reiteró que laboró activamente en el caso de la señora Moreno. Aseguró que tomó al menos dos (2) deposiciones, formuló y contestó interrogatorios. Además, sostuvo que le asesoró sobre su derecho a una nueva representación legal.

En cuanto a los señalamientos de la OPG en cuanto a que el licenciado Rivera no fue diligente al contestar sus requerimientos, expuso que solicitó varias prórrogas debido a la importancia de éstos. Alegó que la falta del expediente de la promovente, así como el haber transcurrido más de diez (10) años desde que concluyó el caso hacía imposible que contestara con precisión, claridad y honestidad los requerimientos de la OPG relacionados con su intervención en un caso que databa de los años 2002 al 2006. Indicó que era necesario tiempo adicional para poder proveerle a esta Curia toda la verdad de lo acontecido en relación con el caso.

Atendido el *Informe de la Procuradora General*, así como la *Objeción al Informe de la Procuradora General* presentada por el licenciado Rivera, el 29 de abril de 2016 emitimos una Resolución mediante la cual le ordenamos a la Procuradora General que presentara la correspondiente Querella conforme a lo dispuesto en la Regla 14 de nuestro Reglamento.

Inconforme, el 16 de mayo de 2016 el querellado nos solicitó que reconsideráramos y que desestimáramos el asunto disciplinario en su contra. Alegó que la querella carecía de fundamento y conexión alguna con la desestimación de la acción de la señora Moreno. Razonó, además, que la acción disciplinaria en su contra estaba prescrita, debido a que los hechos relatados por la quejosa ocurrieron alrededor del año 2005 y la queja se presentó en

mayo de 2009. Evaluados en los méritos los planteamientos del licenciado Rivera, el 9 de junio de 2016 **declaramos no ha lugar su solicitud de reconsideración.**

De conformidad con lo anterior, el 8 de septiembre de 2016 la OPG sometió la Querella donde se le imputaron al licenciado Rivera los siguientes cargos:

### Cargos I y II

El [licenciado Rivera] incurrió en conducta constitutiva de violación a los Cánones de Ética Profesional 9 y 12 (4 LPRA Ap. IX, C.9 y C.12) conforme se desprende del trámite del KPE2001-135[2]. Ello al no asistir a las distintas vistas que se señalaron en el caso […]. […] Con dichas ausencias el abogado incumplió con las órdenes emitida[s] por el Tribunal y causó demoras innecesarias en la tramitación del caso, afectando con ello el calendario del tribunal y los intereses de su cliente. (Nota al calce omitida).

### Cargos III, IV y V

El [licenciado Rivera] incumplió con su deber de proteger de manera diligente, competente, capaz y eficiente los intereses de su cliente en el asunto que le fue encomendado, conforme exige el Canon 18 de Ética Profesional. El trámite del caso KPE2001-1352 demuestra que el letrado no fue diligente, eficiente ni competente en el caso que se le encomendó. Sus constantes ausencias a las vistas señaladas en el caso, incluso el haber dejado el caso inactivo por espacio de seis meses, demuestran su claro incumplimiento con el Canon 18.

Además, el Canon 19 de Ética Profesional requiere del abogado el mantener informado al cliente de todo asunto importante en el caso encomendado. Conforme indicó la [señora Moreno], Promovente de la queja AB-2009-0029, el abogado no le informó de los señalamientos que ocurrían en el caso adviniendo ésta en conocimiento de lo que ocurría cuando el Tribunal ordenó que se le notificara la minuta de la vista que se celebró el 2 de marzo de 2006. La falta de información sobre los

señalamientos en el caso es un asunto importante que debe ser informado por el abogado quien no respondió ni rebatió lo dicho por la Promovente en este aspecto dentro del proceso de la queja que dio base a la presente Querella.

El licenciado Rivera [] también incurrió en conducta contraria al Canon 20 de Ética Profesional al no presentar su renuncia de manera oportuna. Indicativo de ello fueron sus constantes ausencias a las vistas señaladas por razón de que estaba atendiendo casos de otros clientes a quienes le dio clara preferencia sobre el caso de la señora Moreno [] y las distintas sanciones que le fueron impuestas a través de todo el trámite del mismo, las cuales sumaron más de $1,500.00 dólares. El licenciado Rivera [] esperó hasta el 18 de abril de 2006, luego que le fuera notificada a su cliente la minuta de la vista de 2 de marzo de 2006, para someter su renuncia, a pesar [de] que sabía o debió de haber sabido que no podía cumplir de manera adecuada con su responsabilidad para con su cliente.

**Cargo VI y VII**

El [licenciado Rivera] incurrió en conducta contraria al Canon 24 de Ética Profesional al solicitar y recibir un "retainer fee" de $1,000.00 para un caso laboral y suscribir un contrato de servicios profesionales en donde indica que cobrará el $33^1/_3\%$ en contingencia de la suma a recuperarse por la causa de acción por despido injustificado. Al iniciar una gestión profesional, todo abogado debe tener presente el Canon 24 de Ética [P]rofesional, ello en vista de que éste regula el ámbito y las normas generales que rigen en la fijación de honorarios de abogado. […]. (Notas al calce omitidas).

.  .  .  .  .  .  .  .

Habiendo el licenciado Rivera [] solicitado y obtenido un pago de $1,000.00 de parte de su cliente para una reclamación de índole laboral, el letrado, no sólo obtuvo dinero de forma indebida de su cliente[,] sino que también retuvo indebidamente dicho dinero, el que debió devolver al someter su renuncia al caso. Ello acarreó un incumplimiento con lo

dispuesto en el Canon 23 por retener indebidamente dinero del cliente. (Nota al calce omitida).

### Cargo VIII

El [licenciado Rivera] incurrió en conducta constitutiva de violación al Canon 38 de Ética Profesional en los hechos descritos previamente. Ello al conducirse en forma contraria al deber que le impone el Canon 38 de exaltar el honor y la dignidad de la profesión evitando en todo momento el incurrir en conducta impropia. La conducta del abogado al cobrar honorarios no autorizados, suscribir un contrato contrario a las normas establecidas, y al no defender adecuadamente los intereses de su cliente causando con ello demoras irrazonables en el trámite del caso demuestran una conducta reprensible bajo el Canon 38. (Nota al calce omitida).

El 9 de septiembre de 2016 expedimos un Mandamiento para que, dentro de un término de quince (15) días, el licenciado Rivera contestara la Querella sobre conducta profesional.[7] A solicitud del querellado, el 18 de octubre de 2016 emitimos Resolución concediéndole un término adicional de diez (10) días para contestar.

En cumplimiento con lo anterior, el querellado compareció oportunamente mediante *Contestación a Querella de la Procuradora General*. Reiteró sus argumentos anteriores y su deseo de reembolsarle a la promovente la cantidad de dos mil dólares ($2,000.00) a tenor con la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 LPRA sec. 3114 *et seq.*, o en la alternativa, para exaltar el honor de la profesión. En cuanto a los cargos VI, VII y VIII imputados en la Querella, añadió que, al momento de su

---

[7] El *Mandamiento para contestar querella sobre conducta profesional* se le notificó personalmente al licenciado Rivera el 19 de septiembre de 2016.

renuncia, la señora Moreno no le solicitó la devolución del dinero adelantado.

Examinada la Querella, el 14 de febrero de 2017 designamos a la Hon. Isabel Llompart Zeno, Ex Jueza Superior del Tribunal de Primera Instancia, como Comisionada Especial, para recibir la prueba y rendir un informe.

Conforme a lo anterior, la Comisionada Especial citó a una vista inicial el 14 de marzo de 2017 para conocer el estado de los procedimientos. Posteriormente, las partes presentaron el *Informe sobre conferencia entre abogados* donde estipularon el expediente del caso Civil Núm. KPE-2001-1352. En la vista del 2 de agosto de 2017 las partes estipularon copia de la carta del 2 de mayo de 2017 suscrita por el licenciado Rivera y dirigida a la señora Moreno.[8] Estipularon, además, copia de un cheque de dos mil dólares ($2,000.00). El *Informe sobre conferencia entre abogados* se enmendó el 30 de agosto de 2017, mediante *Moción actualizando informe sobre conferencia entre*

---

[8] La copia de la carta, suscrita por el licenciado Rivera y estipulada posteriormente por las partes en la vista del 2 de agosto de 2017, lee como sigue:

Estimada Sra. Moreno:

Conforme a mis expresiones al [T]ribunal [S]upremo relacionad[a]s con su querella contra este suscribiente, mi determinación es que ante la confusión del concepto del depósito realizado por usted de mil dólares ($1,000.00) devolverle dicha cantidad aportada por usted y recibida en nuestra oficina y en adición, hacerle llegar la penalidad por igual cantidad o sea la suma de mil dólares ($1,000.00), para un total de dos mil dólares ($2,000.00). En virtud de lo anterior, adjunto encontrará el cheque #14858 de nuestro bufete, por la cantidad de dos mil dólares ($2,000.00) pagadero a su nombre.

Sinceramente,
Luis Rafael Rivera

*abogados*. En esta última las partes acordaron estipular el testimonio de cinco (5) testigos de buena reputación del licenciado Rivera, mediante declaraciones juradas. Además, la OPG reiteró que solamente presentaría como testigo a la señora Moreno. Por su parte, la representación legal del licenciado Rivera informó que utilizaría como su único testigo al propio querellado.

Luego de varios incidentes procesales, el 14 de septiembre de 2017 se celebró la vista en su fondo a la cual comparecieron la Procuradora General Auxiliar, Lcda. Minnie H. Rodríguez López, el licenciado Rivera y su representación legal, el Lcdo. Mario Rodríguez Torres y el Lcdo. Guillermo Figueroa Prieto. Entre la prueba documental estipulada constó el documento intitulado *Autorización y contrato*, así como el recibo firmado por el licenciado Rivera. Por parte del querellado, se admitió sin objeción de la Procuradora General Auxiliar una bitácora de tres (3) páginas preparada por la oficina del licenciado Rivera en el caso de la promovente. Además, declararon la señora Moreno y el querellado.

Finalmente, el 25 de abril de 2018 la Comisionada Especial sometió su Informe. Concluyó que el licenciado Rivera infringió los Cánones 9, 12, 18, 19, 20, 23, 24 y 38 del Código de Ética Profesional. Por su parte, el 26 de junio de 2018, el licenciado Rivera presentó su *Reacción al Informe de la Comisionada Especial.*

Culminado el proceso ante la Comisionada Especial nos corresponde evaluar las actuaciones del licenciado Rivera a la luz del derecho aplicable.  Veamos.

## II

Al prestar juramento para ejercer la profesión, los abogados se comprometen a desempeñar con lealtad los deberes y responsabilidades que le imponen la ley y el Código de Ética Profesional, 4 LPRA Ap. IX.  Este último cuerpo normativo contiene las pautas mínimas de conducta que los letrados deben desplegar ante sus clientes, la sociedad, los compañeros de profesión y las instituciones de justicia.  *In re* Vilches López, 196 DPR 479 (2016); *In re* Villalba Ojeda, 193 DPR 966 (2015).

### A. Canon 9. Conducta del abogado ante los tribunales

En particular, el Canon 9 de Ética Profesional, 4 LPRA Ap. IX, C. 9, exige que los profesionales del Derecho exhiban una conducta respetuosa ante los tribunales.  Este deber de respeto para con los tribunales incluye la obligación de todo miembro de la clase togada de atender con igual diligencia y seriedad nuestras órdenes, así como las del Tribunal de Primera Instancia y el Tribunal de Apelaciones.  *In re* Roldós Matos, 161 DPR 373 (2007); *In re* Soto Colón, 155 DPR 623 (2001); *In re* Grau Díaz, 154 DPR 70 (2001).  De tal forma, "incumplir reiteradamente con las órdenes del tribunal, sumado a una serie de incomparecencias injustificadas del abogado a vistas pautadas por el foro de instancia que ocasi[onen] una

dilación indebida en la tramitación del caso" constituye una conducta en contravención al Canon 9, 12 y 18. *In re* Montalvo Delgado, 196 DPR 541, 556 (2016).

**B. Canon 12. Puntualidad y tramitación de las causas**

El Canon 12 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 12, establece como deber de todo abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. En el cumplimiento de este deber, el abogado debe desplegar todas las diligencias necesarias para **asegurar que no se causen indebidas dilaciones en la tramitación y solución del asunto que le sea encomendado.** Además, el Canon 12, *supra*, dispone que **la suspensión de una vista solo se debe solicitar cuando existan razones poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente.**

Cónsono con lo anterior, hemos advertido que conductas tales como "la incomparecencia injustificada a las vistas señaladas por el tribunal, así como las actuaciones y omisiones **que pongan en riesgo** la causa de acción de los clientes, son infracciones patentes de este canon". (Énfasis nuestro.) *In re* Avilés Vega, 197 DPR 829, 841 (2017); *In re* Montalvo Delgado, *supra*.

Por otro lado, hemos reconocido que los tribunales deben ser comprensivos cuando las circunstancias del caso ameriten la posposición de la vista. *In re* Vélez Lugo, 168 DPR 492 (2006). Sin embargo, el hecho de que el abogado

tenga un señalamiento conflictivo no es considerado como una razón válida para suspender y posponer una vista señalada con tiempo. *In re* Rivera Ramos, 178 DPR 651 (2010); *In re* Vélez Lugo, *supra*; Neri Tirado v. Tribunal Superior, 104 DPR 429 (1975). Peor aún, la incomparecencia injustificada de un abogado a las vistas señaladas por el tribunal que ocasiona la suspensión o la desestimación de la acción judicial devela una violación patente del Canon 12, *supra*. *In re* Rivera Ramos, *supra*.

## C. Canon 18. Competencia del abogado y consejo al cliente

El Canon 18 de Ética Profesional, 4 LPRA Ap. IX, C. 18, específicamente indica que será impropio de un abogado asumir una representación profesional cuando es consciente de que no puede rendir una labor idónea y competente. Asimismo, le advierte a la clase togada que deben evitar asumir dicha representación si "no pueden prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia". Íd.

De otra parte, "[e]n el contexto de la gestión profesional de un abogado, la diligencia implica que este realice las gestiones que le fueron encomendadas en momento oportuno, en forma adecuada y sin dilaciones que puedan afectar la pronta solución de una controversia". S. Steidel Figueroa, Ética para Juristas: Ética del Abogado y Responsabilidad Disciplinaria, [s.l.], Ed. Situm, 2016, págs. 220-221.

Cónsono con lo anterior, hemos advertido reiteradamente que el deber de diligencia "constituye una obligación básica y elemental del abogado hacia su cliente". *In re* Miranda Daleccio, 193 DPR 753, 762 (2015). Por lo tanto, constituye una violación a este deber la "conducta negligente **que pueda acarrear, o que acarree**, la desestimación o archivo del caso". (Énfasis nuestro.) *In re* Vilches López, *supra*, pág. 485. A modo de ejemplo, hemos mencionado que un abogado incurre en conducta que constituye una violación al deber de diligencia cuando:

> (1) **no comparece a los señalamientos del tribunal**; (2) no contesta los interrogatorios sometidos; (3) no informa a las partes sobre la presentación de un perito; (4) **desatiende o abandona el caso**; (5) permite que expire el término prescriptivo o jurisdiccional de una acción, o (6) **incurre en cualquier tipo de actuación negligente que pueda conllevar o, en efecto, resulte en la desestimación o archivo del caso**. (Énfasis nuestro.) *In re* Miranda Daleccio, *supra*, págs. 762-763. Véanse, además, *In re* Santos Cruz, 193 DPR 224 (2015); *In re* Nieves Nieves, 181 DPR 25 (2011).

De manera que, el deber de diligencia resulta "incompatible con la desidia, despreocupación y displicencia" incurrida por un abogado al atender aquellos asuntos que le han sido encomendados por su cliente. *In re* Miranda Daleccio, *supra*, pág. 762.

## D. Canon 19. Información al cliente

El Canon 19 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 19, le impone a todo abogado la obligación de mantener a su cliente informado de aquellos incidentes importantes que surjan durante la tramitación del asunto

para el cual fue contratado. Esta obligación aplica independientemente del deber de diligencia comprendido en el Canon 18, *supra*. *In re González Rodríguez*, 2018 TSPR 165, 201 DPR __ (2018). Véanse, también, *In re Nazario Díaz*, 198 DPR 793 (2017); *In re Rosario Vázquez*, 197 DPR 237 (2017).

Así pues, para cumplir efectivamente con el deber que impone el Canon 19, *supra*, es necesario que el letrado se comunique efectivamente con sus clientes. *In re González Rodríguez*, *supra*. Sin embargo, el simple hecho de sostener comunicación con el cliente durante el trámite del caso, por sí sólo, no satisface las exigencias de este Canon. *In re González Díaz*, 2018 TSPR 168, 201 DPR ___ (2018). Es decir, todo abogado debe cerciorarse de que su representado "esté debidamente informado **de todos los asuntos importantes** que se susciten en la tramitación de su caso." (Énfasis nuestro.) *In re Miranda Daleccio*, *supra*, pág. 764. Véase, además, *In re Santos Cruz*, *supra*.

Asimismo, todo letrado debe tener en cuenta que el caso pertenece al cliente. Por lo tanto, éste tiene derecho a mantenerse informado de todos los asuntos y las gestiones importantes que se susciten en la tramitación del mismo. *In re González Rodríguez*, *supra*; *In re Avilés Vega*, *supra*; *In re Rosario Vázquez*, *supra*. En consecuencia, un abogado incumple con el Canon 19, *supra*, por ejemplo, cuando no mantiene informado a su cliente de la situación procesal del caso, no le informa de un resultado adverso en la

gestión encomendada, se torna inaccesible o no atiende los reclamos de información de su cliente. *In re González Rodríguez, supra; In re Otero Calero,* 2018 TSPR 112, 200 DPR ___ (2018); *In re Nazario Díaz, supra; In re Vázquez Bernier,* 198 DPR 459 (2017); *In re Hernández López,* 197 DPR 340 (2017); *In re Rodríguez López,* 196 DPR 199 (2016).

### E. Canon 20. Renuncia de representación legal

El Canon 20 de Ética Profesional, 4 LPRA Ap. IX, C. 20, atiende los pasos que debe seguir un abogado para renunciar a la representación legal de sus clientes. Primeramente, un togado que haya comparecido ante el tribunal representando a un cliente debe obtener el permiso del tribunal para que la renuncia sea efectiva. Además, solamente debe procurar la renuncia cuando existan razones justificadas e imprevistas para ello.

Particularmente, el Canon 20, *supra*, dispone que previo a renunciar a la representación legal, todo abogado debe realizar las gestiones necesarias para evitar que los derechos de su cliente se vean menoscabados. En específico, deberá: notificarle al cliente de su renuncia; orientarle sobre la necesidad de obtener una nueva representación legal cuando sea necesario; concederle tiempo para procurar una nueva representación legal; advertirle sobre fechas límites y términos que impacten su causa de acción o para la presentación de cualquier escrito que pueda beneficiar su caso; y orientarle sobre el

cumplimiento de cualquier otra disposición legal del tribunal al respecto, incluyendo la notificación al tribunal de la última dirección conocida de su representado.

Asimismo, el Canon 20, *supra*, le exige al abogado que, al ser efectiva la renuncia, le entregue a su cliente el expediente y todo documento relacionado con el caso. Además, deberá **reembolsar inmediatamente** cualquier cantidad que le haya sido pagada en honorarios por servicios que no prestó.

A tono con lo anterior, hemos señalado que cuando un abogado se ve impedido de representar adecuadamente a su cliente, constituye un error de juicio y una violación al Canon 20, *supra*, continuar llevando el caso. *In re Avilés Vega*, supra.

### F. Canon 23. Adquisición de intereses en litigio y manejo de los bienes del cliente

En torno a la relación entre el abogado y su cliente, el Canon 23 de Ética Profesional, 4 LPRA Ap. IX, C. 23, preceptúa que la naturaleza fiduciaria de esta relación exige que la misma esté fundada en la honradez absoluta. Además, dispone con relación a todo abogado que "debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen". Canon 23, *supra*.

Específicamente, un abogado que retiene fondos de sus clientes incurre en una práctica altamente lesiva a la profesión legal y menoscaba la relación de honradez y

confianza que debe existir entre él y su cliente. *In re González Díaz*, *supra*; *In re González Rodríguez*, *supra*; *In re Vázquez O'Neill*, 121 DPR 623 (1988). Por consiguiente, hemos resuelto que infringe el Canon 23, *supra*, un abogado que retiene cualquier cantidad de dinero perteneciente a su cliente. *In re González Díaz*, *supra*; *In re González Rodríguez*, *supra*; *In re Rivera Irizarry*, 155 DPR 687 (2001). Ello, "independientemente de que haya devuelto el dinero retenido o no haya tenido la intención de apropiárselos permanentemente". *In re Martí Rodríguez*, 194 DPR 467, 474, (2016). Incluso, la dilación en la devolución de dichos fondos es causa suficiente para infringir el Canon 23, *supra*. *In re González Díaz*, *supra*; *In re Colón Hernández*, 189 DPR 275 (2013).

### G. Fijación de honorarios

### 1. Canon 24. Fijación de honorarios

Por su parte, el Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 24, regula la fijación de honorarios profesionales y establece que esta tarea debe regirse siempre por el principio de que nuestra profesión es una parte integral de la administración de la justicia y no un mero negocio con fines de lucro. Además, dispone que, al fijar el valor de los honorarios deben considerarse los siguientes seis (6) factores:

> (1) El tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso;
> (2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que

se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes;

(3) **los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares;**

(4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado;

(5) la contingencia o certeza de la compensación, y

(6) la naturaleza de la gestión profesional, si es puramente casual o para un cliente constante. (Énfasis nuestro.) Canon 24, *supra*.

Igualmente, el mencionado cuerpo normativo regula los honorarios de naturaleza contingente. En específico dispone que:

. . . . . . . .

Un abogado debe exigir el pago de honorarios contingentes sólo en aquellas ocasiones en que dichos honorarios sean beneficiosos para su cliente, o cuando el cliente lo prefiera así después de haber sido debidamente advertido de las consecuencias. Canon 24, *supra*.

. . . . . . . .

**2. Limitaciones estatutarias**

Asimismo, hemos resuelto que un abogado que no sigue las normas establecidas para la fijación de honorarios viola el Canon 24, *supra*. *In re* Acevedo Álvarez, 178 DPR 685 (2010).

Además de las exigencias del Canon 24, *supra*, existen ciertas limitaciones estatutarias respecto a la fijación de honorarios profesionales. *In re* Otero Calero, *supra*;

Hernández Maldonado v. Taco Maker, 181 DPR 281 (2011).

Según surge de la Ley Núm. 402, *supra*, los abogados están impedidos de llevar a cabo pactos sobre honorarios con trabajadores o empleados que se encuentran en la necesidad de reclamar contra sus patronos al amparo de leyes locales o federales. Su objetivo es proteger a los trabajadores contra los contratos a base de porcentaje, debido a que los mismos, según dicha ley, redundan en detrimento de la paz industrial. En tales reclamaciones laborales, si el empleado prevalece, es el patrono quien paga los honorarios del abogado y no el empleado. A tenor con el mencionado estatuto, se estableció expresamente que:

> [S]on **nulos y contrarios al orden público** todos los contratos, convenios o acuerdos en que trabajadores o empleados se obliguen directa o indirectamente a pagar honorarios a sus abogados en casos de reclamaciones judiciales o extrajudiciales contra sus patronos bajo la legislación laboral de Puerto Rico o bajo la legislación laboral del Congreso de Estados Unidos aplicable a Puerto Rico, o al amparo de un convenio de naturaleza individual o colectivo. (Énfasis nuestro.) Art. 3, Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 LPRA sec. 3116.

A su vez, la referida pieza legislativa impone a todo abogado que reciba compensación de un empleado la **obligación** de reembolsarle la cantidad que le haya sido pagada, más una suma igual de dinero en concepto de daños líquidos.

Por otra parte, hace más de dos décadas resolvimos que

> los honorarios de abogado que dispone de forma mandatoria el Art. 4 de la Ley Núm. 100 [de 30 de junio de 1959], 29 LPRA sec. 149, son compensatorios y constituyen la única y

exclusiva suma que podrá cobrar el abogado de un trabajador que inste reclamación bajo dicha ley, correspondiéndole el pago al patrono perdidoso. (Énfasis suprimido.) López Vicil v. ITT Intermedia, Inc. [II], 143 DPR 574, 577 (1997). Véase, también, López Vicil v. ITT Intermedia, Inc. [I], 142 DPR 857 (1997).

De igual modo, establecimos que, como regla general, la cuantía máxima que podrá recibir un abogado de un trabajador victorioso en una reclamación bajo la Ley Núm. 100, *supra*, será el veinticinco por ciento (25%) de la indemnización base concedida al trabajador. López Vicil v. ITT Intermedia, Inc. [II], *supra*.

## H. Canon 38. Preservación del honor y dignidad de la profesión

Por último, el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38, instituye el deber de todo abogado de exaltar el honor y la dignidad de su profesión y de evitar hasta la apariencia de conducta profesional impropia. Ello implica que todo letrado debe desempeñarse de forma escrupulosa y guiado por un alto sentido de responsabilidad, teniendo siempre presente la función social que ejerce y la institución que representa. *In re* Fingerhut Mandry, 196 DPR 327 (2016).

## I. El proceso disciplinario

El propósito del proceso disciplinario "no es castigar al abogado, sino proteger al público y a la profesión legal mediante una investigación de las condiciones morales del letrado para determinar si puede continuar ejerciendo la abogacía". *In re* García Aguirre, 175 DPR 433, 441 (2009). Así pues, "[l]os procedimientos disciplinarios instados

ante este Tribunal son independientes de las acciones civiles o criminales que puedan surgir de los mismos hechos". Íd. Véanse, además, *In re* De la Texera Barnes, 165 DPR 526 (2005); *In re* Deynes Soto, 164 DPR 327 (2005). De igual modo, décadas atrás resolvimos que nuestro poder disciplinario no debe utilizarse para convertirnos en una agencia de cobro. *In re* Cepeda Parrilla, 108 DPR 353 (1979).

Por su parte, la Regla 14 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B (Supl. 2018), establece el procedimiento disciplinario aplicable a los abogados y a los notarios. En específico, dispone que le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba. De manera que, sus determinaciones fácticas merecen nuestra mayor deferencia. *In re* Acevedo Álvarez, *supra*. Asimismo, hemos resuelto que este Tribunal no está obligado a aceptar el Informe del Comisionado Especial designado para atender la querella contra un abogado. Es decir, este Foro puede adoptar, modificar o rechazar tal Informe. Íd. Sin embargo, de ordinario sostenemos las conclusiones de hecho determinadas por el Comisionado Especial a menos que se demuestre prejuicio, parcialidad o error manifiesto. *In re* García Ortiz, 187 DPR 507(2012); *In re* Torres Viñals, 180 DPR 236 (2010).

**III**

Analizada la normativa disciplinaria pertinente entendemos que, conforme refleja el Informe de la

Comisionada Especial, el licenciado Rivera infringió los Cánones 9, 12, 18, 19, 20, 23, 24 y 38 de Ética Profesional según imputados en la Querella.

Previo a adentrarnos en materia ética sustantiva, es preciso reiterar que los procedimientos disciplinarios instados ante este Tribunal son independientes de las acciones civiles que puedan surgir de los mismos hechos. Así pues, aunque la señora Moreno solicitó en la Queja la indemnización por los daños y angustias mentales que alegadamente el licenciado Rivera le causó por su inacción en el manejo del caso, éste no es el procedimiento adecuado para atender su reclamación.

Pasamos entonces a examinar la conducta del licenciado Rivera a la luz de los preceptos éticos aplicables.

Conforme al aludido Informe, al licenciado Rivera se le responsabiliza, en síntesis, por desempeñarse en forma contraria a los principios éticos que rigen la práctica de la profesión; a saber: (1) ausentarse de múltiples vistas señaladas por el Tribunal de Primera Instancia en el caso Civil Núm. KPE-2001-1352; (2) desatender el asunto encomendado por su cliente y dejarlo inactivo por más de seis meses; (3) no mantener a su cliente informada de los pormenores importantes del caso y no notificarle los señalamientos de vista; (4) cobrarle mil dólares en concepto de *retainer fee* en un caso laboral, así como retener dicha suma de dinero luego de renunciar al caso; (5) pactar honorarios en el contrato de servicios

profesionales por treinta y tres y un tercio por ciento ($33^1/_3$%) en un caso laboral; y (6) no haber renunciado al caso de manera oportuna.

Habida cuenta de la abundante prueba que obra en el caso, coincidimos con las determinaciones de la Comisionada Especial. Es decir, existe prueba clara, robusta y convincente de las violaciones imputadas.

En primer lugar, el licenciado Rivera se ausentó sin justificación válida de siete (7) de las ocho (8) vistas señaladas en el caso KPE-2001-1352 que se ventilaba ante el Tribunal de Primera Instancia y no excusó sus incomparecencias a las mismas conforme a nuestro ordenamiento jurídico. Ello conllevó la imposición de múltiples sanciones por parte de la Jueza que presidió los procedimientos.

Por otro lado, al estudiar el tracto procesal del caso KPE-2001-1352 surgen varias instancias que evidencian la falta de diligencia y competencia del licenciado Rivera al atender el asunto encomendado. El querellado permitió que el caso se mantuviera inactivo por más de seis (6) meses, dilatando injustificadamente los procedimientos y acarreando una posible desestimación.

Los hechos pormenorizados en los párrafos que anteceden demuestran por parte del licenciado Rivera falta de diligencia, desdén hacia las órdenes del tribunal e indiferencia a los deberes consignados en los Cánones 9, 12 y 18 de Ética Profesional. Aun así, reconocemos que no

obra en autos prueba clara robusta y convincente que evidencie la responsabilidad del letrado en cuanto a la eventual desestimación del caso, puesto que esto ocurrió dos (2) años después de su renuncia.

El licenciado Rivera infringió, además, el Canon 19, *supra*, al no mantener una comunicación efectiva con su cliente. Del testimonio oral de la señora Moreno en la vista en su fondo, surge que ésta llamó en varias ocasiones a la oficina del licenciado Rivera; que nunca logró comunicarse con él y éste nunca le devolvió sus llamadas. Testificó, además, que se reunió con el querellado solamente en cuatro (4) ocasiones. La primera, para firmar el contrato; la segunda, antes de una deposición; la tercera, para estar presente en la deposición; y la cuarta, cuando lo visitó para llevarle la Minuta de la vista del 2 de marzo de 2006. Alegó que en la cuarta visita el licenciado le **informó** su renuncia al caso y que se lo había remitido al licenciado Zayas. Es menester señalar que la Comisionada Especial, en su Informe, hizo constar que lo declarado por la señora Moreno le mereció entera credibilidad.

En cuanto a la renuncia del licenciado Rivera al caso de la señora Moreno, adelantamos que no fue realizada oportunamente. A pesar de que sabía o debió haber sabido que no podía cumplir de manera adecuada con su responsabilidad para con su cliente, el querellado esperó hasta el mes de abril de 2006, luego que le fuera

notificada a su cliente la Minuta de la vista de 2 de marzo de ese mismo año, para solicitarle al foro de instancia su renuncia. Es decir, transcurrieron más de cuatro (4) años desde que el letrado presentó la demanda hasta que finalmente solicitó al Tribunal de Primera Instancia que lo relevara de la representación legal. En particular, el licenciado Rivera aceptó en la vista en su fondo que no debía continuar con la gestión que le fue encomendada, porque tenía una práctica muy intensa. Además, señaló que en varias ocasiones tuvo severos conflictos de calendario en casos criminales, y según el licenciado Rivera, el caso criminal normalmente prevalece sobre los casos civiles en sus señalamientos. Lo anterior, refleja que el licenciado Rivera incurrió en conducta contraria al Canon 20, *supra*.

En la vista en su fondo el licenciado Rivera admitió que para el año 2001 le solicitó a la señora Moreno mil dólares ($1,000.00) para representarla en un caso de índole laboral contra el antiguo patrono de ésta. Igualmente, reconoció que actuó incorrectamente al catalogar en el recibo de dicha suma que ésta le fue entregada en concepto de *retainer fee*.

Es menester señalar que, al ser efectiva su renuncia, el licenciado Rivera tenía el deber ético de **reembolsarle inmediatamente** a la señora Moreno cualquier cantidad que ésta le hubiese pagado en honorarios por servicios que no prestó. Tampoco podemos pasar por alto que la Ley Núm. 402, *supra*, **prohíbe a los abogados recibir compensación**

**alguna por parte de un empleado con relación a reclamaciones laborales.** En consecuencia, al haberle cobrado a la señora Moreno la cantidad de mil dólares ($1,000.00) en contra de la ley, y retener dicha suma de dinero desde el año 2001 hasta el año 2017, mucho después de su renuncia y luego de comenzado el trámite disciplinario en su contra, el licenciado Rivera actuó contrario a los Cánones 20 y 23 de Ética Profesional.

Por otro lado, el licenciado Rivera aceptó en la vista en su fondo que pactó con la señora Moreno una cláusula de contingencia vedada en los casos laborales. Recordemos, que en este tipo de reclamación es el patrono quien tiene la obligación de pagar los honorarios si se dicta sentencia a favor del obrero. Asimismo, se reputan **nulos y contrarios al orden público** todo contrato en que los trabajadores se obliguen directa o indirectamente a pagar honorarios a sus abogados en casos de reclamaciones judiciales o extrajudiciales contra sus patronos. Consecuentemente, el querellado violó lo establecido en la Ley Núm. 402, *supra*, y faltó al Canon 24, *supra*, al iniciar una gestión profesional sin tener presentes los postulados de este canon, ni el estado de Derecho vigente en nuestro ordenamiento jurídico.

Finalmente, podemos concluir que las actuaciones del licenciado Rivera durante el trámite de la reclamación laboral de la señora Moreno vulneraron el Canon 38, *supra*. Indudablemente, al cobrar honorarios no autorizados y

suscribir un contrato contrario a las normas establecidas, el querellado no exaltó el honor y la dignidad de la profesión legal. Además, su conducta en el caso reflejó una patente falta de respeto al foro primario, a la administración de la justicia y a su cliente. No podemos permitir que la clase togada, en el ejercicio de la profesión legal, arriesgue las reclamaciones que le encomiendan sus clientes al comportarse con desidia, dejadez y ausentarse, sin justa causa, de las vistas señaladas por los foros judiciales.

## IV

Según lo anteriormente expuesto, nos corresponde determinar la sanción disciplinaria a imponerle al licenciado Rivera por el comportamiento exhibido. Al fijar la misma, procede que consideremos los siguientes factores: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fuera imputada; y (9) otros atenuantes o agravantes que surjan de los hechos. *In re* Roldán González, *supra*; *In re* Miranda Daleccio, *supra*; *In re* Planas Merced, 180 DPR 179 (2010).

Por su parte, la Comisionada Especial determinó que el licenciado Rivera incurrió en las faltas éticas imputadas.

Sin embargo, no sugirió una sanción concreta en su Informe. Recomendó que al momento de imponer una sanción disciplinaria consideráramos la gravedad de su conducta, así como los atenuantes en el caso. Cónsono con lo anterior, identificó los siguientes atenuantes: (1) el licenciado Rivera goza de buena reputación; (2) no medió ánimo de lucro; (3) no presentó una defensa frívola de su conducta; (4) no ocasionó perjuicio a su clienta, en el sentido de que cuando renunció al caso otro abogado lo continuó por espacio de dos años más hasta que eventualmente fue desestimado; (5) aunque tardíamente, el querellado resarció a su clienta; y (6) aceptó la mayoría de los hechos, tales como sus ausencias a las vistas y los términos del contrato.

En cuanto al licenciado Rivera, éste expuso en su *Reacción al Informe de la Comisionada Especial*, entre otras cosas, que: (1) su buena reputación no estaba en controversia; (2) no tiene historial disciplinario previo y la Querella trata de una conducta aislada; (3) no presentó una defensa frívola ni evidenció ánimo de lucro en su actuación; (4) aceptó que su conducta dilató los procesos en el Tribunal de Primera Instancia; (5) su actuación no le ocasionó perjuicio a la señora Moreno, ni a ninguna de las partes; (6) reconoció que está prohibido cobrar *retainer fees* en los casos laborales; (7) le reembolsó a la señora Moreno los mil dólares ($1,000.00) entregados por ésta, así como una cantidad adicional de mil dólares ($1,000.00) como

penalidad; (8) no causó la desestimación del caso; y (9) demostró aceptación o arrepentimiento sincero por su conducta.

Cabe destacar que el licenciado Rivera ha ejercido la abogacía por más de treinta y siete (37) años sin haber sido disciplinado anteriormente. Sin embargo, la labor desplegada por el letrado no rindió beneficio alguno en favor de su cliente. Al cobrarle a la señora Moreno una suma inicial para atender su caso y pactar el treinta y tres y un tercio por ciento ($33^1/_3$%) en honorarios contingentes, el querellado minó el valor del trabajo del obrero protegido por la Ley Núm. 402, *supra*. Consideramos que, precisamente por el tiempo que lleva en la profesión, el querellado debió conocer que su conducta se apartaba de nuestros preceptos éticos.

## V

Analizado el Derecho aplicable, así como las infracciones éticas incurridas por el licenciado Rivera, decretamos su suspensión inmediata del ejercicio de la abogacía y la notaría por el término de dos (2) meses. Le ordenamos notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos, así como informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente. Además, deberá acreditar y certificar ante este

Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la profesión de solicitarlo en el futuro.

De otra parte, se le ordena al Alguacil de este Foro incautar inmediatamente la obra y el sello notarial del señor Rivera y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. Además, en virtud de su suspensión inmediata del ejercicio de la abogacía y la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. Asimismo, la fianza se considerará buena y válida por tres años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia al señor Rivera Rodríguez a través de la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:


Luis Rafael Rivera Rodríguez          CP-2016-10
     Conducta
                                             Profesional


SENTENCIA

En San Juan, Puerto Rico a 31 de julio de 2019.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, decretamos la suspensión inmediata, por el término de dos (2) meses, del Lcdo. Luis Rafael Rivera Rodríguez del ejercicio de la abogacía y la notaría.

El señor Rivera Rodríguez deberá notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos, e informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente. Asimismo, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de la Opinión *Per Curiam* que antecede y de esta Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la profesión de solicitarlo en el futuro.

Se le ordena al Alguacil de este Foro incautar inmediatamente la obra y el sello notarial del señor Rivera Rodríguez y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. Además, en virtud

de esta suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. Asimismo, la fianza se considerará buena y válida por tres años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese personalmente la Opinión *Per Curiam* que antecede y esta Sentencia al señor Rivera Rodríguez a través de la Oficina del Alguacil de este Tribunal.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García está conforme y emite la siguiente expresión:

> Es evidente que en este caso, están presentes factores atenuantes que inclinan la decisión a una razonable y donde debe imperar un criterio de proporcionalidad. No podemos perder de perspectiva que las infracciones a los preceptos éticos deben considerarse a la luz de las circunstancias particulares de cada caso. En ese contexto, el licenciado Rivera Rodríguez no tuvo responsabilidad alguna en la desestimación del pleito de la promovente, toda vez que el caso fue desestimado dos años después del letrado haber renunciado a la representación legal. Asimismo, ante las reiteradas incomparecencias ante el Tribunal de Primera Instancia, este abogado fue objeto de múltiples sanciones económicas con las que cumplió cabalmente.

El Juez Asociado señor Estrella Martínez disiente y emite la siguiente expresión:

> Ante la correcta conclusión de que el letrado se distanció de los Cánones 9, 12, 18, 19, 20, 23, 24 y 38 del Código de Ética Profesional, discrepo de la adopción de un término de suspensión de dos (2) meses, por considerar que la sanción disciplinaria debió ser por un término mayor. Si bien es cierto que existen atenuantes que ameritan no tomar el camino de la drástica sanción de la suspensión indefinida, no es menos cierto que la suspensión por un término tan exiguo se distancia de la proporcionalidad que debe servir de norte al ejercer nuestro rol disciplinario. A modo de ejemplo, tan reciente

como el año pasado, nos enfrentamos a la lamentable situación de tener que disciplinar a un abogado que llevaba treinta y siete (37) años en la práctica, la misma cantidad de años que lleva ejerciendo el licenciando Rivera Rodríguez. A pesar de que también mediaron atenuantes y de que encontramos violaciones por Cánones similares, aunque no tan numerosos como la querella que nos ocupa, este Tribunal dictaminó correctamente una suspensión que triplica la otorgada en el día de hoy. *In re George Otero Calero*, 2018 TSPR 112. Además, la tendencia jurisprudencial es clara en cuanto al tratamiento brindado a letrados que incurren en violaciones a más de media docena de Cánones de Ética Profesional, especialmente los que nos ocupan. Por las razones expuestas, respetuosamente disiento de la sanción dispuesta por una Mayoría de este Tribunal.

El Juez Asociado señor Colón Pérez emite la siguiente expresión:

El Juez Asociado señor Colón Pérez hubiese suspendido al licenciado Rivera Rodríguez del ejercicio de la profesión legal por un término de seis (6) meses, ello por su crasa violación a los Cánones 9, 12, 18, 19, 20, 23, 24 y 38 del Código de Ética Profesional.

La Juez Asociada señora Rodríguez Rodríguez no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo